DEAN, Respondent, v. ST. LOUIS WOODENWARE WORKS, Appellant.

St. Louis Court of Appeals, March 29, 1904.

1. MASTER AND SERVANT: Assumption of Risk: Contributory Negligence. The difference between negligence and assumption of risk is in the different states of mind in which they are rooted; negligence is the result of inattention or oversight; assumption of risk implies knowledge of the danger and willingness to encounter it; it is palpable that an act done willingly and on full information is not done negligently.

Dean v. Woodenware Works.

2. ———: ———: **Knowledge of Danger.** In order that an employee assume the risk not usually incident to his employment, he must thoroughly comprehend it and freely accept it. If he is aware of the risk, encountering it under protest, and remains after complaining of the danger, the risk is not assumed.

3. ———: ———: ———: **Jury Question.** In an action by a servant for injuries incurred while running a ripsaw for the defendant, where the evidence was conflicting as to whether certain appliances could have been used to make the operation of the saw more safe, and also as to whether one of such appliances, which was used, was in good condition, and where plaintiff, who had had experience with saws, was struck by a board hurled from the saw which caused him to pitch upon the saw, the question whether he assumed the risk was properly left to the jury.

4. ———: **Contributory Negligence: Direction of Foreman.** Where the evidence showed that the plaintiff was instructed by the foreman to saw in a certain manner, but sawed in a different and improper manner directed by a fellow-servant, and, while sawing in that manner, was injured, he was guilty of negligence which was the proximate cause of his injury, although the fellow-servant was afterwards made foreman, but gave no further directions.

5. ———: ———: ———: **Jury Question.** But where there was evidence tending to show that the fellow-servant, who made the suggestion upon which the plaintiff acted, had been put in control of the plaintiff by the foreman and was in control at the time of making it, the question of contributory negligence was for the jury.

6. ———: **Safe Appliance: Departure.** In an action by an employee for injuries incurred while running a saw for the defendant, where the evidence tended to show that either one of several appliances would have made the machine reasonably safe and that one of such appliances was attached, but conflicted as to whether it was in a bad state of repair, it was error to instruct the jury on the assumption that the saw lacked all such appliances.

Appeal from St. Charles Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED.

*Kehr & Tittmann* for appellant.

Where a person having a choice of two ways, one of which is perfectly safe and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and can not recover. Moore v. Railway, 146 Mo. 572; Hurst v. Railway, 163 Mo. 310; Palmer v. Kinloch Co., 91 Mo. App. 106.

*Rassieur & Buder* and *Noel & Bond* for respondent.

(1) It is the duty of employers to furnish their servants with reasonably safe tools and appliances with which to do their work, and their failure to do so constitutes actionable negligence. O'Mellia v. Railroad, 115 Mo. 218; Nicholds v. Plate Glass Co., 126 Mo. 55; Curtis v. McNair, 173 Mo. 270; Minnier v. Railway, 167 Mo. 99. (2) Plaintiff's knowledge of the defect or insufficiency of the machine with which he was required to work does not bar his recovery, because the danger was not so glaring and obvious as to threaten immediate injury to him. Mahaney v. Railroad, 108 Mo. 191; Soeder v. Railway, 100 Mo. 673; Devore v. Railway, 86 Mo. App. 429; Booth v. Air Line, 76 Mo. App. 519; Pauck v. Dressed Beef & Prov. Co., 159 Mo. 467; Curtis v. McNair, 173 Mo. 281; Parsons v. Packing Co., 96 Mo. App. 382. If plaintiff might reasonably have supposed that he could, by the exercise of care and caution, work with said sawing machine without injury to himself, then the knowledge of its defective or insufficient condition does not bar his recovery. Huhn v. Railway, 92 Mo. 440. (3) It was defendant's duty, through its authorized officers and agents, to inspect and keep in repair the machine with which plaintiff was required to work. Huth v. Dohle, 76 Mo. App. 676; Gutridge v. Railway, 105 Mo. 525. The appellate court can not take cogni-

zance of a failure by the lower court to instruct on a theory which was not presented by either side. Spurgeon v. West, 23 Mo. App. 42; Davidson v. Biermann, 27 Mo. App. 655; Simonds v. Oliver, 23 Mo. 32; Fearey v. O'Neill, 149 Mo. 467; Hall v. Jennings, 87 Mo. App. 627; Wheeler v. Bowles, 163 Mo. 398. (4) Appellant's counsel, in point four of their brief, charge plaintiff with shifting from the allegation in his petition as to a splitter. Since the testimony in the case shows the object of a splitter to be to spread the lumber, and shows that the splitter must be thicker than the saw in order to do this, and further shows that a splitter thinner than the saw is no splitter at all, respondent fails to see wherein he has shifted from the allegations in his petition. Black v. Railway, 172 Mo. 176. (5) In answer to point five, in appellant's brief, respondent says: First. That the witnesses testifying as to the dangerous condition of the machine at which plaintiff was working, having been shown to have had years of experience operating similar machines, were experts, and the weight of their testimony was for the jury. Kaminski v. Iron Works, 167 Mo. 462; Fischer v. Pkg. & Prov. Co., 77 Mo. App. 108; Turner v. Haar, 114 Mo. 335; Benjamin v. Railway, 50 Mo. App. 602. (6) In answer to the point made in appellant's brief that plaintiff chose the dangerous instead of the safer way in sawing, it is sufficient to say that he sawed in the manner he was shown by foreman Herr, who was a vice principal at the time of directing plaintiff. But defendant's counsel having offered no instruction in the court below on this subject, can not now raise the point for the first time. (7) At the time Ferdinand Herr directed plaintiff how to saw, he, Herr, was a vice principal, because he had been placed by the general foreman, Tietz, as superintendent or director of plaintiff's work. Dowling v. Allen, 74 Mo. 13; Clowers v. Railroad, 21 Mo. App. 213; Stephens v. Railroad, 96 Mo. 207; Schroeder v. Railroad, 108 Mo. 322; Hutson v. Railway, 50 Mo. App. 300; Cox v. Granite

Co., 39 Mo. App. 424; Haworth v. Railway, 94 Mo. App. 215.

STATEMENT.

Three fingers of plaintiff's left hand were cut off and the fourth disabled by a ripsaw in defendant's factory which he was operating, and this action was brought to recover the damages incident to the injury. Plaintiff obtained a verdict and defendant appealed.

The saw which inflicted the injury was a small one revolving on a mandrel under the top of a table, but protruding above the top through a slot. The defendant company manufactured woodenware, principally washboards; and this saw was used to cut the legs of washboards from cottonwood lumber. Dean was employed July 27, 1901, and hurt August 20, less than a month afterwards. He had previously worked in factories and with saws. No one testified concerning the facts of the accident except himself. His account is that while he was sawing a board into washboard legs, holding his left hand on top of the board and pushing with his right, it was suddenly hurled from the saw and struck him in the stomach, causing him to pitch forward and thrust his left hand along the slick surface of the table until it came in contact with the saw.

The allegations of the petition with regard to the negligence of the defendant, are as follows:

"Plaintiff further states that defendant did place him to work upon a machine or table with a revolving saw then known to the defendant to be, and which by the exercise of ordinary care might have discovered it to be in a very poor, unsafe and dangerous condition in this, that said machine, had no feed-roll nor other appliance or apparatus by which the lumber being cut by said saw could be held down upon said table, so as to prevent said lumber from being thrown back by said saw with violence to and against the person operating the same;

and had no hood, nor other appliance, to prevent the hand of the person operating the same from coming in contact with and being injured by the said saw; and had no splitter, nor other appliance, at the rear of said saw, to prevent said saw from becoming fastened and clamped in the lumber being sawed thereat and throwing said lumber with great violence to and against the person operating said machine; and that the saw of said machine was broken and out of repair and was defective in this; that one of the teeth of said saw was broken off and absent therefrom and that the remaining teeth of said saw were not properly set for the work to be done thereon, in this, that said remaining teeth were not deflected from the body of the saw; but had been permitted by defendant to become and remain straightened and even with the body of the saw, rendering the operation of said machine very unsafe and dangerous; which condition of said saw was known to the defendant, or by the exercise of ordinary care might have been discovered by it.

"Plaintiff alleges that some appliance or apparatus such as a hood, which would prevent the hand of the person operating said machine from coming in contact with said saw, or some appliance such as a feed-roll, which would hold down the lumber being sawed upon said machine, and prevent such lumber from being thrown back to the person operating said machine, or some appliance or apparatus such as a splitter at the rear of said saw, which would prevent said saw from being clamped by the lumber being sawed upon said machine, was indispensably necessary to the reasonably safe condition of said machine; that said machine had neither of said appliances, and that in consequence thereof was a very unsafe and dangerous machine; that defendant at and before the time of plaintiff's injury hereinafter alleged, knew, or by the exercise of ordinary care might have known, that said machine had neither of the said appliances, and that defendant then and there

knew, or by the exercise of ordinary care might have known, that said machine without one of said appliances was a very unsafe and dangerous machine; that defendant also wholly neglecting and disregarding its duty towards plaintiff provided him with moist and damp lumber, and required him to saw the same into strips or pieces of certain sizes at and upon said machine; that said lumber, by reason of its said moist and damp condition, was not adapted to nor fit for the work in which plaintiff was then engaged, and added great danger to the performance of said work in this; that the said moist and damp condition of said lumber caused it to more readily clamp and fasten itself to said saw, thereby causing said saw to throw said lumber back to and against the person operating the machine.''

An analysis of those statements discloses that the specific complaints preferred are these: the sawing apparatus was not reasonably safe, because it had neither a feed-roll, hood or spreader, one of which attachments is necessary to make the operation of such machinery ordinarily or reasonably safe; a tooth of the saw was broken and the rest badly set; the boards plaintiff was required to saw were damp, which enhanced the danger. The attachments mentioned in the petition as necessary to the safety of a ripsaw need to be defined; and from the evidence we gather that a hood is a tin or sheet-iron cap, partly covering a saw and preventing the board from flying up while the saw is cutting it and striking the operative. A feed-roll or automatic feeder, is a toothed appliance something like a saw, but working in front of the saw proper and feeding the board to it automatically; it, too, tends to prevent the board from being thrown against the sawyer by the hold its teeth take; at least, there was evidence that way, though there was some to the contrary. A splitter, spreader or divider, the appliance is spoken of by all three designations, is a piece of iron or steel, slightly thicker than, and set about two inches behind the saw it is to be used

with, so as to spread the seam in the wood and thereby hinder the clamping of the saw. There was testimony that a spreader increased the safety of such a machine by preventing the saw from struggling with the wood and hurling it against the sawyer. Witnesses testified as to other devices which are used to hinder the wood from being thrown forward; an occurrence which is quite dangerous to the operative. Several witnesses swore the saw in question was of improper construction and very dangerous, and that one of the devices mentioned was necessary to render it reasonably safe and in conformity with the way such machines are usually equipped. A spreader, or divider was used in connection with the saw; but there was testimony that it had worn thinner than the saw itself and, therefore, did not hold the seam open. There was other testimony that it was in good order and effective.

At the plaintiff's instance, the court, besides other instructions, gave these:

"If the jury find from the evidence in this cause that the apparatus used for sawing boards by which plaintiff was injured, from its make and construction, was unsafe, and that it could have been made reasonably safe by the exercise of ordinary care on the part of defendant in the application of some practical device or contrivance to protect the operator from being cut by the saw, and that the defendant knew of such unsafe condition or might have known thereof by the exercise of reasonable care and diligence, they are instructed that the defendant is liable to plaintiff for any injuries he has received in consequence of such defect in the make and construction of such apparatus after it was known or ought to have been known to defendant, even if such defect was known to the plaintiff; provided, that plaintiff at the time of his injury was exercising ordinary care and prudence, and provided further, that such defect in such apparatus was not so dangerous as to threaten immediate injury to plaintiff from its use or if

plaintiff might reasonably have supposed that he could work with said apparatus without injury to himself, by the use of ordinary care and caution.

"The jury are instructed that it was defendant's duty through its authorized officers or agents to inspect · and keep in repair the sawing apparatus with which plaintiff was required to work at the time of his injury; therefore, if the jury find and believe from the evidence that the saw with which the plaintiff was engaged sawing boards at the time of his injury was out of repair, and that said defective condition of said saw directly caused plaintiff's injury, and that plaintiff at the time of his injury was exercising ordinary care and prudence in his work, and that defendant knew, or might have known, by the exercise of ordinary diligence, the defective condition of said saw then and in that event the defendant is liable to plaintiff for any injury caused plaintiff by the defective condition of the saw, even if plaintiff at the time of his injury knew of the defective condition of said saw; provided, that such defective condition of said saw did not render the same so dangerous as to threaten immediate injury to plaintiff from its use, or if plaintiff might reasonably have supposed that he could work with said saw in its defective condition without injury to himself by the use of ordinary care and caution."

At the request of the defendant these instructions were given:

"4.   Neither of the several allegations of fact, upon which plaintiff bases the charge of negligence against the defendant is material unless the jury find from the evidence that such fact caused or directly aided in producing the injury complained of; and unless you find that the fact charged is material, in the sense above defined, you will disregard it.

"5.   The employer is not bound to adopt other machinery or later improvements in machinery, and is not liable for any injury which might have been avoided

if such other or improved machinery had been used; and he may conduct his business in his own way and is only bound to see that the machinery which he uses is reasonably safe for the purpose for which it is intended to be used.''

The court gave these charges of its own motion:

''(A) The petition charges that a feed-roll, hood or splitter was indispensably necessary to the reasonably safe condition of the machine or table upon which plaintiff claims to have been hurt, and that said machine was unsafe and dangerous because of the alleged absence of said appliances.

''If you are satisfied from the evidence that the machine or table in question was provided with a proper splitter, you will disregard the charge to the contrary in the petition.

''If you believe and find from the evidence that persons of ordinary prudence in that line of business do not use a feed-roll or hood in ripping boards of the size and kind which plaintiff was engaged in cutting and that the machine was reasonably safe without such feed-roll, then you will disregard the charge that its absence was negligence on the part of the defendant.

''If you find and believe that the teeth of the saw in question were such as a person of ordinary prudence would use under like circumstances, and that the machine was reasonably safe with the teeth of the saw in the condition they were when the injury occurred, then you will also disregard the charge of negligence relating to the saw.

''Unless you believe from the evidence that the lumber which plaintiff was engaged in ripping was so moist or damp that a person of ordinary prudence in that line of business would not allow it to be ripped or cut, you will also disregard the charge of negligence based on the condition of the lumber.

''B.    When the plaintiff entered the employment of the defendant, he assumed all the ordinary risks of

the service in which he engaged, and it became his duty to exercise his own skill and judgment to protect himself against them; and if you find from the evidence that he was injured in consequence of one of these risks or by his own carelessness, then he can not recover."

The court gave another charge of its own motion which will be copied in the opinion.

Instruction "B" above, was requested by the defendant with the following clause appended, but said clause was refused:

"Moreover, the plaintiff can not recover if the alleged defects of the machine or table, or the condition of the lumber were obvious to him whilst at work upon the same."

GOODE, J. (after stating the facts).—As is usual in negligence cases, no matter how contradictory the evidence, an appeal is made to us to summarily end this litigation on the ground that no cause of action was proven prima facie. In this connection it is insisted by the defendant that these facts were established beyond controversy: First; the saw was reasonably safe; second, it was of a kind in general use—another form of stating the first proposition, the defendant says; third, plaintiff, in undertaking and continuing to operate it, assumed the risk of the injury he received, as the danger incurred was obvious; fourth, his method of sawing was negligent and caused or contributed to his injury. Suffice to say as to those propositions that there is testimony against the truth of the facts on which each of them must repose. Whatever attention they may severally call for in an attempt to intelligently dispose of the appeal, will be paid to them as we proceed.

The safety of the machine was denied by seven men and affirmed by nine; and each of those witnesses testified to an experience with ripsaws that ought to have educated him concerning the equipment adapted to make

them safe.   In considering the request for a nonsuit, we have realized the very great difficulty the jury faced in striving to ascertain the truth from the testimony of the experts.   The question of whether a saw rigged as the one in question was, is reasonably safe for use, is so simple that it looks like men familar with the operation of saw machinery would know the truth and agree as to what it is.   But there was a bewildering diversity of views among the witnesses who spoke on the subject in this case.   Some said a hood was necessary to render a saw ordinarily safe, and gave plausible reasons for their statement; others that a hood was needless, and others that it increased the danger.   Some experts swore a feed-roll, or automatic feeder, was important to the security of a sawyer and a practical device; others, that it was impracticable and of little or no benefit.   As to a spreader, certain witnesses deemed it useless in sawing short boards like those the plaintiff handled, and others that it made for safety.   There was a conflict, too, as to the extent of the use in woodenware factories, of the respective devices mentioned.   One would gather from the plaintiff's witnesses, that saws like the one that hurt him are used never, or but little, without one or more of those contrivances; and from the defendant's witnesses, that ripsaws with none of them are in general use throughout the country; further, that some of the attachments had been abandoned after tests, as hindrances to safe and satisfactory work.   If we could afford the space, the best answer to the contention that we ought to declare no evidence was   adduced to show the machinery was defective, would be to array the contradictory opinions of the witnesses.   The testimony was given by men who qualified as experts according to the legal standard, it was properly let in for the jury to weigh in connection with the other evidence, and the foregoing epitome of it demonstrates that the sawing apparatus was not so conclusively shown to be in a reasonably safe condition, as to make it the duty of

the court to direct a verdict for the defendant for that reason.

The contention is put forward that the plaintiff assumed the risk of working with the machine in the condition it was, and, therefore, can not recover for the injury received. The argument is that the state of the saw and its attachments, and the danger incident to operating it, were obvious; that the plaintiff accepted employment with full knowledge of the danger, and at the same time, accepted the risk; that it was part of the contract of employment, and part of the consideration for his wages, that he should assume the risk of injury. In answer to this argument it is said to be a master's duty to furnish his servant reasonably safe tools and appliances to work with; that if he fails to do so he is guilty of negligence, and that the servant can not assume the risk of injury from his employer's negligence and exonerate the letter from liability. It is the law that a master can not contract against the consequences of his own negligence; and it is the law, too, generally speaking, that a master must furnish his servant reasonably safe tools. Curtis v. McNair, 173 Mo. 270; Blanton v. Dold, 109 Mo. 64. The two defenses of assumption of risk and contributory negligence are unlike because of the different states of mind in which they are rooted. It is palpable that an act done willingly and on full information is not done negligently; and this distinction is recognized throughout the law of torts. Negligence is the result of inattention or oversight; whereas consent to a risk implies knowledge of the danger of the act to be performed and the performance of the act understandingly and without constraint. Adolff v. Columbia Pretzel & Baking Co., 100 Mo. App. 194. The doctrine that a master can not contract against his own negligence, is not inconsistent with permitting an employee to agree to work with tools and machinery of a certain kind and in a certain state of repair, thereby taking the responsibility on himself and relieving the master. Porter v.

Railway, 71 Mo. App. 66; Sullivan v. Mfg. Co., 113 Mass. 396; Ladd v. Railway, 119 Mass. 412; Thomas v. Quartermain, 18 Q. B. Div. 685; Holmes v. Clark, 6 H. & M. 49; Id., 7 H. & M. 937; Ogden v. Rummans, 3 Frost. & F. 751; Holmes v. Worthington, 2 Frost. & F. 533; Patterson v. Railroad, 76 Pa. St. 389; Dillon v. Railroad, 3 Dillon 320; Kroy v. Railroad, 32 Iowa 357; Gibson v. Railroad, 63 N. Y. 449. The essence of the matter is that the employee must thoroughly comprehend the risk, if it exceeds that ordinarily connected with such a task, and freely accept it; instead of facing it reluctantly and under protest. He may be aware of the risk he encounters without assenting to it; because some coercive influence, such as fear of losing employment, controlled him; and if he remains after complaining of the danger, according to the best authorities, as we think, the risk is not assumed. Smith v. Baker, L. R. (1891) App. Cas. 325; Railroad v. McDade, 135 U. S. 554; Reichla v. Greunsfelder, 52 Mo. App. 43. On the other hand, he may not realize the peril he faces when he engages to serve, or afterwards, nor until an accident befalls. And, usually, the question of whether an employee fully understood the risk he was incurring and assented to it, as part of his contract of employment, or did a perilous act of his own spontaneous will and so as to bring into play the maxim *volenti non fit injuria*, is for the jury. Chambers v. Chester, 172 Mo. 461. But it is said in this case that the danger the plaintiff incurred was obvious and, therefore, must be presumed to have been accepted. It was, of course, apparent to the plaintiff, as to every one, that if he put his hand against the saw he would be wounded; and that risk he undoubtedly assumed as an ordinary incident of his work. But it was far from obvious to an inexperienced observer, and is not conclusively shown to have been obvious to the plaintiff, that he was in danger of being stunned by a hurled board and, in consequence, of thrusting his hand

against the saw. That danger was extremely latent and would hardly occur to one who had not witnessed accidents of the kind. A fellow-servant (Herr) swore he warned the plaintiff, but this statement was denied. Besides, the plaintiff was not employed on an understanding that he should work with the machine which hurt him, but was ordered to work with it afterwards. On all the facts, we conclude the defense of assumed risk was for the jury's consideration, and approve the refusal of the trial court to charge that the plaintiff could not recover if the alleged defects of the machine or table were obvious to him while he was working with them. The defects may have been obvious without his realizing that they threatened the peculiar accident which he said occurred.

The argument that the plaintiff's testimony showed his own negligence caused his injury, finds more plausible, but not impregnable support. According to the testimony for the defendant, the operator of the saw was supposed to stand at the right side of the table, put the board against a gauge which was on the right, slowly push against the near end of the board with a stick in his right hand, holding the board in place by putting his left hand on the left corner of it, with the thumb on the near end. Plaintiff admitted he was instructed by the foreman Tietz when he took service, to use the saw that way, and said he did so preferably until Herr, a coservant, reproved him and showed him a different method; namely, by putting his hand on the top of the board about two-thirds of the way to the saw. Dean swore unequivocally that if he had been permitted to saw as he wished and as Tietz told him, he would have escaped injury, and that the cause of his injury was following Herr's advice. As no paraphrase of an event can be as graphic as the words of a witness, we will quote a few excerpts from what Dean said:

"The foreman I first worked for was Mr. Tietz.

He sawed my way, the only way to saw. The foreman of the place now, he was running a saw to my left, and when he would see me sawing my way, he would fly around and have me saw his way.

"Q. He (Herr) told you to put your hand on the board? A. Yes, sir. He was ripping thin stuff and he could put his hand on the board that way and I couldn't.

"Q. You knew how to handle a ripsaw before you went into the woodenware work? A. Yes, sir; if they hadn't have changed their way of sawing at this place I would not have got hurt. . . .

"When Mr. Tietz showed me, he said to saw the way I did. I was holding my hands at the end of the board and shoving and pushing with a stick at the same time, with both hands. I had to use both hands and the foreman of the place after Mr. Tietz quit there . . . when he saw me sawing my way as Mr. Tietz showed me, he came and had me put my hand on the board like this."

Again:

"Mr. Tietz was the man who showed me how to operate the saw. Mr. Tietz showed me like this, like everybody saws.

"Mr. Herr showed me this way, his way of sawing. . . . Every time he would see me sawing this way he would fly over and have me put my hand here (on top of the board). . . .

"Q. You made a statement that if you had been permitted to work the way you wanted to you would not have been hurt? A. Yes, sir.

"Q. Who was it interfered with your operating the saw the way you wanted to? A. That gentleman over there (pointing to Herr).

"Q. And he was foreman at the time you were hurt? A. Yes, sir.

"Q. And saw you working that way? A. Yes, sir.

"Q.   He was not foreman at the time you say he told you to put your hand on the board?   A.   No, sir.

"Q.   On the day he was foreman he gave you no instructions at all?   A.   No, sir."

The argument is that the foregoing statement of Dean shows him to have been guilty of negligence, inasmuch as he disregarded the instruction of the foreman (Tietz) to saw in a perfectly safe manner and adopted the advice of a fellow-servant (Herr) to saw in a dangerous manner.   If Herr was only a fellow-servant when he gave the advice, Dean had no right to take it against the instruction of his foreman, and there would be no escape from the conclusion that his own negligent disobedience was the proximate cause of the injury.   The fact that Tietz ceased to be foreman the day before Dean was hurt, and that Herr succeeded him as foreman the morning of that day, does not help the plaintiff's case; because plaintiff testified that Herr gave him no instruction after he became foreman, and the mere fact that he had succeeded Tietz, would not elevate to a command the advice he gave while a fellow-servant.   But there was evidence that Tietz had placed Herr in authority over Dean as to the manner of sawing, while Tietz was still foreman, and had then directed Dean to watch Herr and Herr to watch Dean. Herr interfered with Dean's method of sawing, he admitted, but said he insisted on Dean putting his left hand on the end of the board instead of on top; while Dean's testimony is directly to the contrary.   It is highly improbable that Herr, if he was directed by Tietz to control Dean, would insist on a method different from what Tietz had prescribed; but that was for the jury.   Here is the evidence on the point of Herr's authority, quoting his own words:

"Q.   How did he (Dean) handle the machine?   A. Well, the way he caught a hold of the wood, Mr. Tietz showed him first, he always caught a hold of the wood first, and I went over and showed the man; he always

held his wood like this; I went and told the man not to take it like that.

"Q. You say Tietz showed him first? A. Yes, sir; how he showed him I didn't pay any attention; but I attended to my work and *Tietz told him to watch me.*

"Q. One moment, please, let me put the questions and you answer them and we will get along much better; you say Tietz brought him to the table? A. Yes, sir.

"Q. And showed him how to handle the lumber? A. Yes, sir, he showed him.

"Q. Now, then, you say you were occupying the adjoining table? A. Yes, sir. . . .

"Q. Who sets the gauge? A. I set it for him; that is, set this gauge; Tietz told me to watch him and set it for him."

From that evidence the inference may be drawn that Tietz put Dean under the direction of Herr as to the manner of holding a board, or told him to follow Herr's method and advice.

The defense of contributory negligence, though much relied on here, was not submitted below by an instruction to the jury; and, in truth, was not raised except by the request that the jury be directed to find the issues for the defendant. The court gave instructions expressing the rule that the plaintiff was not guilty of negligence in working with the saw unless the danger of doing so was great enough to deter a man of ordinary prudence; and that is the law. Curtis v. McNair, supra. We conclude that the defense of contributory negligence was for the jury, and was properly submitted.

The error which ran through the trial of this case and was carried into the instructions was losing sight of, or rather allowing too little influence to, the fact that the saw was provided with a spreader attachment. It will be observed that the petition does not aver that a hood, feed-roll and spreader were all essential to the reasonable safety of the saw; but that one of them was;

and the theory of the petition is that this saw was unsafe because it had neither. That, too, was the purport of all the testimony introduced by the plaintiff in regard to the imperfect construction of the machine. The witnesses did not testify that all those contrivances were necessary; but the experts for plaintiff insisted that one or the other was, though differing widely as to which one. The petition proceeds on the theory that either was sufficient; and that, on the whole, is the effect of the testimony. That the machine was provided with a spreader was undisputed, the plaintiff's testimony with reference to that attachment having been directed toward proving it was too thin to be a safeguard, and the defendant's that it was adequate. As the petition attacked the safety of the apparatus because of its improper construction in lacking a device to prevent a board from being thrown against the sawyer, while the entire evidence showed it had such a device, but one in bad repair according to some of the witnesses, it is plain the evidence did not support the case pleaded, but varied from it. Defendant's counsel now insist that testimony in regard to the inadequacy of the spreader was erroneously received, and this would be true if objection had been made to its reception; but several attentive perusals of the record have failed to detect such an objection. Instead of objecting, the defendant squarely met the issue by evidence that the spreader was good and worked well. It thus appears that plaintiff was not entirely to blame for the admission of the irrelevant evidence. Insofar as the defendant's responsibility for the accident depended on the lack of an appliance to hold the board firmly, the question for determination was whether the appliance provided for that purpose was reasonably effective. That a spreader was provided, no one denied, and that any other appliance, such as a feed-roll or hood was provided, no one asserted. Palpably then the issue for the jury in this connection was the sufficiency of the spreader. A vol-

ume of testimony was put in as to how hoods and automatic feed-rolls work on such saws, and whether they are necessary; thus encumbering the case with matter which tended to obscure the issues and mislead the jury.

But the reversible error in this connection is found in some of the instructions granted by the court against the defendant's objection. The first instruction submitted the question of whether the saw was unsafe in its make and construction, and could have been made reasonably safe by the application of some practical device or contrivance to protect the operative. The postulate of that instruction was that there was evidence to show the saw lacked all of the safety appliances alleged to be necessary, and was, therefore, of faulty construction. This theory was exploded by the testimony of every witness, including the plaintiff. Every one conceded the sawing apparatus had a safety attachment, the criticsm being that the appliance was out of repair and inadequate. The court gave this instruction, too, which carries the same false assumption:

"If the jury find from the evidence that the machine or table upon which plaintiff claims to have been hurt was such as a person of ordinary prudence, engaged in that line of business would use for the purpose of ripping boards of the size and kind which the plaintiff was engaged in cutting at the time he was hurt, and that said machine was reasonably safe without the application thereto of some practical device or contrivance to protect the operator from being cut by the saw, then the plaintiff can not recover upon the charge that the machine had no such device or contrivance attached to it, at the time plaintiff was injured."

The instructions assumed, in favor of the plaintiff, a contested fact, to-wit: that the saw was provided with none of the appliances alleged to be necessary to render it safe. They may have impressed the jury with the belief that the machine had no safety attachment, and,

presumably, they were prejudicial to the defendant. Instructions which assume a fact in controversy are erroneous. Day v. Railroad, 81 Mo. App. 471; Dulaney v. Sugar Refining Co., 42 Mo. App. 659; Meriwether v. Railroad, 45 Mo. App. 529; Smith v. Railroad, 163 Mo. 645. To make this point clear we will quote a portion of the testimony in reference to the divider. Dean swore a divider should be wedge-shaped, and further made these statements, in reference to the one in question: "It had a divider, a piece of metal which projected into the slot. It was worn until it was not any thicker than a piece of paper; scarcely that thick. It was thinner than the saw itself; was about four inches behind the saw, which was two-sixteenths of an inch thick and the spreader should have been four-sixteenths of an inch, or two-sixteenths of an inch thicker." Thus it appears that the complaint of Dean is that the divider was thinner than the saw; whereas it should have been thicker. Perhaps he may be said to have complained also that the divider was too near the saw.

Now let us turn to the testimony of a witness who worked with the same machine immediately after Dean was hurt:

"Q. Now, Mr. Rehg, what I mean to ask you and what you no doubt understood me, was the splitter upon the saw in July and August of last year? A. Yes, sir.

"Q. At the time Dean was hurt; how was that splitter located with reference to the saw? A. How was it? It was about an inch and a half away from the saw; from an inch to an inch and a half; not more than an inch and a half.

"Q. From an inch to an inch and a half back of the saw? A. Yes, sir.

"Q. Now, this edge, the edge next to the saw, was that sharp, or is it wide? A. No, sir; that's thin; about a sixteenth of an inch.

"Q. How was the splitter on the machine on which

Dean was hurt at the end furthest from the saw? A. About three-sixteenths.

"Q. How much wider than the saw was that? A. A sixteenth of an inch.

"Q. That was the kind of a splitter on the saw? A. Yes, sir; I run the saw before Dean took charge of it about two years; I run it after he got hurt, the day after he got hurt."

Therefore, according to the testimony for the defendant, the divider in question was about like Dean said it ought to be and was just like other witnesses thought it ought to be; whereas, according to Dean's testimony, it was useless because too thin. Here was a direct issue of fact in regard to the condition of the safeguarding attachment which the saw had, and which was admittedly sufficient to render the apparatus reasonably safe if of proper thickness and rightly placed. It is true the court told the jury in another instruction that if they were satisfied the machine was provided with a proper spreader they should disregard the charge to the contrary; but we think that instruction failed to make it clear that the decision of the issue in regard to whether a safety attachment was provided, turned on the effectiveness of the one actually provided. Too much was said in the other charges about a feed-roll and a hood, and the jury might have thought they were authorized to find for the plaintiff because the saw had no feed-roll or hood.

Negligence in requiring plaintiff to saw damp wood was alleged and that the saw had a broken tooth, and its other teeth were set so that their points did not project beyond the sides of the saw; wherefore they cut a narrow seam which increased the tendency of the board to clamp and be flung against the sawyer. Dean swore the broken tooth had nothing to do with the accident, and there was no testimony that the alleged dampness of the board or the set of the teeth, would have caused it, if the saw had been provided with one of the safe-

guards. We suppose those were make-weight allegations rather than serious ones. At all events the testimony fails to connect said imperfections with the injury as efficient causes. Dean said the grain of the wood would make it clamp, wet or dry; and one of the experts swore that the drier the wood the more it clamped the saw. Dean had complained of the dullness of another saw the morning of the day he was hurt and it was removed. He said that when the fresh saw was put in, he noticed the set of the teeth but made no objection. But the essence of this matter is that no evidence was adduced to prove the moist state of the wood, if it was moist, or the condition of the saw's teeth, would or could have caused the mishap if the saw had had one of the enumerated safety attachments in good working order.

Defendant's counsel have much to say on the proposition that the test of the reasonable safety of a machine is that machines of the same kind are in general use. We find it unnecessary to deal with that proposition, which, by the way, is much controverted; because the courts which maintain that general usage is the legal test of the reasonable safety of machinery, concede that the test has no application in cases involving defective machines, but relates only to the type or variety of machines furnished the servant. General usage neither does nor can justify a master in furnishing his employee an apparatus or tool to work with that is out of repair, and all courts so hold. 1 Labatt, Master and Servant, sec. 46, and citations. Plaintiff's case as made by the evidence, does not rest on proof of an improper construction of the sawing apparatus, but on proof that the spreader was out of repair and ineffective. Therefore, general usage had nothing to do with the matter, the question for decision being whether the defendant had negligently provided a spreader so defective as to render the apparatus not reasonably safe.

The judgment is reversed and the cause remanded to be retried in accordance with this opinion. *Bland, P. J.,* and *Reyburn, J.,* concur.