ZEIGENMEYER, Admr. of the estate of MITCHELL, Respondent, v. GOETZ LIME & CEMENT COMPANY, Appellant.

**St. Louis Court of Appeals, June 19, 1905.**

1. MASTER AND SERVANT: Safe Place to Work: Hazardous Employment. The duty of a master in furnishing his servant a safe place to work does not require him to provide against hazards such as are necessarily incident to the employment.

2. ——: ——: ——. The master is not required to furnish his servant a safe place in which to work where the danger is temporary only and when it arises from the hazard and progress of the work itself and is known to the servant.

3. ——: ——: ——: Assumption of Risk. Where an employee was injured by the falling of a stone thrown into the air by a blast from the quarry where he was working, after he had been warned in the usual way that the explosion would take place, he could not recover, because the falling stone, resulting from the blast, was an incident of the employment of which he assumed the risk.

Appeal from Franklin Circuit Court.—*Hon. Wm. A. Davidson*, Judge.

REVERSED.

*McKeighan & Watts, Edwin W. Lee*, and *Wm. R. Gentry* for appellant.

The plaintiff assumed the risks that were incident to his employment in the usual operation of the business. He was injured by one of those risks. It was as obvious to any man as it was to the foreman. The demurrer should have been sustained on that ground. Fugler v. Bothe, 117 Mo. 475, 22 S. W. 1113; Aldridge v. Furnace Co., 78 Mo. 559; Steinhauser v. Spraul, 127 Mo. 541, 28 S. W. 620, 30 S. W. 102; Junior v. Light &

Power Co., 127 Mo. 79, 29 S. W. 998; Epperson v. Cable
Co., 155 Mo. 346, 50 S. W. 795, 55 S. W. 1050; Bunt v.
Mining Co., 138 U. S. 485; Bradley v. Railway, 138 Mo.
293, 39 S. W. 763; Sullivan v. Mfg. Co., 113 Mass. 396.

*Jas. Booth* and *John W. Booth* for respondent.

STATEMENT.

This is an action for personal injuries, a stone from
a blast having fallen upon plaintiff's head, whereby his
skull was crushed. The plaintiff was in the employ of
the defendant as a laborer at its quarry. The defendant,
a corporation, owns and maintains a stone quarry in
Franklin county. The plaintiff's testimonty shows the
following facts, which are not controverted by the de-
fendant.

Plaintiff resided one and one-fourth miles from the
quarry and in the year 1893 or 1894 had worked in the
quarry and was familiar with the work and its risks.
In the latter part of March, 1902, he again employed
himself to defendant as a laborer. His business was
that of teamster, hauling wood to the furnaces of the
kilns and hauling stone into the kiln. The site of the
quarry is well elevated on a high bluff on the south side
of the Missouri river. The Frisco Railway runs along
at the foot of the bluff and between the plant and the
river. Defendant's kiln was built between the railway
track and the bluff. A bridge about fourteen feet wide
was built over the roof of the kiln and connected with
the bluff. A very large smokestack from the kiln, as
much as ten feet in diameter, protruded above this bridge.
It was the duty of the plaintiff to load his cart with
stone in the quarry and drive therewith down the hill
onto the bridge immediately over the kiln and dump or
unload the stone into this huge smokestack through two
large doors provided in the side of this smokestack. The
stone would thus fall into the kiln. The stone in the
quarry was raised by blasts with large quantities of ex-

plosives as is usual in quarries. There were two kinds of blasts known to plaintiff and others who worked there; quib shots, which were small blasts, and the block shots, which were very large and heavy blasts, in which were used from ten to fifteen 25-pound cans of powder each. The duties of plaintiff brought him constantly in and out of the quarry where he loaded his cart with the stone and he always knew about the blasts; when a blast was being prepared and about when it would be discharged. After a blast was prepared, but before it was discharged, defendant had someone of its employees, with a loud voice, go out of the quarry and give several whoops at intervals, which was a warning signal to the employees that a blast was about to be fired. It was the duty then of all the men to seek shelter from the flying stones. The protection for those who worked in the quarry was usually a shelter in the bluff, which existed by virtue of an overhanging rock. It would accommodate fifty men and there were not one-half that number to use it. It was perfectly safe, at least no flying stone from blasts had ever gotten in there. Plaintiff usually unloaded his cart on the bridge at the smokestack and then crawled under the cart for protection. At other times, he stepped inside of the smokestack for shelter from the falling stones which resulted from the blasts. On the day of the injury, July 18, 1902, after plaintiff had been in this second employment for more than three months, a block shot of fourteen cans of powder was about to be fired. One Sheldon gave the usual warning. Plaintiff knew of the preparation for the shot, heard and understood, and acted upon the warning by stepping inside of the smokestack, the topmost joint of which tapered from its ten foot base, leaving a reasonable outlet for the smoke when the kiln was in blast. This topmost tapering joint constituted a kind of roof over the very large lower portion of the smokestack. The topmost portion of the smokestack, the roof portion thereof, was of sheet-iron and not of very strong mater-

ial, and on the side next to the quarry a portion there-
of had broken loose from the rivets, thus leaving a hole
through which falling stone could pass. Of this, plain-
tiff admitted having full knowledge, having seen it be-
fore. Upon the firing of the blast or shot in question,
a stone fell through this hole in the chimney portion or
top of the smokestack, striking plaintiff on the head,
thereby crushing his skull into his brain, inflicting a
severe, permanent and painful injury. Plaintiff, in his
testimony, stated he might have gone into the bluff and
have been safe, where the men from the quarry were,
but it was three hundred or four hundred yards out of
his way to have done so, or he might have driven his
cart and horse to the barn by opening gates and going to
some trouble and have been safe there, but he had al-
ways sheltered on the bridge, either under the cart or
in the smokestack. Plaintiff was wholly familiar with
the work. He testified that he had worked at everything
about the quarry except drilling, also that there were
often rocks thrown from the quarry onto the bridge
where he took shelter but not very large ones. He fur-
ther testified as follows:

"Q. To what extent, if any, was rock thrown by
blasts from the quarry past the kiln and out into the
river? A. Well, I have seen it go 100 yards out in the
river from block shot.

"Q. What kind of rocks? A. Well, rocks that
weighed from one to three pounds, depending on the
size of the shot.

"Q. What do you know about it throwing rock
across the river? A. Well, recently, I do not know.

"Q. Well, how far do you know of it throwing the
rock in the river? A. It has gone as far as three hun-
dred yards that I know. . . . .

"Q. What did you say were the sizes of the rock
that fell there at the bridge? A. Well, from the size
of your fist down."

He further testified that neither the foreman nor

anyone representing the company had ever ordered him or suggested to him that he take refuge on or about the bridge but that such had always been his custom and the foreman knew it. All of the evidence goes to show that plaintiff or none of the employees was required or expected to proceed with their work while blasts were being fired or stones falling therefrom and that the warning was given for no other purpose than to cause them to suspend operations and seek shelter during that time.

The petition was in two counts. The first count pleaded the principal facts as hereinabove set out and predicated a right of recovery upon the alleged negligence of defendant in failing to provide plaintiff with a safe place to work. The second count stated the same facts and predicated the right of recovery upon the alleged negligence of defendant in loading and exploding an extraordinary blast. On the trial, the evidence showed that the blast was not extraordinary. The verdict on the second count therefore, was for the defendant, and on the first count the jury returned a verdict for plaintiff in the sum of $1,800. Defendant appeals to this court and insists that the court erred in submitting the case to the jury for the reason that the plaintiff assumed the risk and that, having chosen his own place of refuge, his going into the smokestack with a hole therein immediately over his head through which falling rocks might pass and inflict an injury, as was done, would preclude a recovery upon the ground of contributory negligence. After judgment, plaintiff departed this life. The case now stands revived in the name of his administrator.

There are several errors in the instructions given and refused. It will be unnecessary for us to notice but one as the view we take of this case will preclude any recovery.

NORTONI, J. (after stating the facts).—The finding of the jury for the appellant on the second count

of the petition as above stated, eliminated from the case
the charge of negligence in exploiting an extraordinary
blast, and the finding for the respondent upon the first
count of the petition affirmed that appellant was neg-
ligent in failing to provide respondent with a reason-
ably safe place in which to carry on his work, so that,
as the case stands before us, the recovery is predicated
upon the failure to furnish a safe place to work. The
question of safe place is the only question with which we
are called upon to deal. The question presented for our
decision is, granting all the facts to be true as stated,
does the law require appellant to furnish a place at all
times reasonably safe to its servants who are conducting
business for it, the very nature of which business ren-
ders the place temporarily unsafe at times?

The law does not require the master to furnish an
absolutely safe place in every instance for the servant to
work for the reason that the law recognizes that such
requirement would be unreasonable on its part and im-
possible of fulfilment on the employer's part, in view of
the fact that there are many undertakings and employ-
ments which are dangerous within themselves and about
the conduct of which no absolutely safe and secure place
could be furnished. Therefore, the obligation which the
law places upon the master is to some extent a relative
obligation and only requires him to exercise reasonable
care to provide as safe a place for the performance of
the services as the character of the work to be done will
permit, or in other words, the law requires the master
to furnish his servant a suitable place to do his work,
where, by the exercise of ordinary care on his part, he
may perform his work with safety or subject only to
such hazards as are necessarily incident to the employ-
ment. [Bradley v. Railroad, 138 Mo. 293, 39 S. W. 763;
Sullivan v. India Mfg. Co., 113 Mass. 396; O'Connell v.
Clark, 48 N. Y. 74-75; Fugler v. Bothe, 117 Mo. 475, 22
S. W. 1113; Livengood v. Joplin, etc., L. & Z. Co., 179
Mo. 229, 77 S. W. 1077; 20 Am. & Eng. Ency. Law (2

Ed.), 55-57.] To follow the question still further, we find the rule of safe place is not applicable to every state of facts, nor is the principle of safe place pertinent in every case that may arise out of the multiplicity of employments and diversity of risks encountered. It has one well defined and thoroughly established exception. It is that the master is not required to furnish his servant a safe place in which to work where the danger is temporary only and when it arises from the hazard and progress of the work itself, and is known to the servant. [Davis v. Mining Co., 117 Fed. 122-124; Bradley v. Railroad, 138 Mo. 293, 39 S. W. 763; O'Connell v. Clark, 48 N. Y. 74-75; Armour v. Hahn, 111 U. S. 313-318; Finalyson v. Utica, Min., etc., Co., 14 C. C. A. 492-494; Durst v. Carnegie Steel Co., 173 Pa. St. 162-165; Whittaker v. Bent, 167 Mass. 588-589; Meehan v. Speirs Mfg. Co., 172 Mass. 375; Browne v. King, 100 Fed. 561; Anderson v. Min. Co. (Utah), 50 Pac. 815; Railroad v. Jackson, 65 Fed. 48; Livengood v. Joplin, etc., L. & Z. Co., 179 Mo. 229; 20 Am. & Eng. Ency. Law (2 Ed.), 57; City of Minneapolis v. Lundin, 58 Fed. 525; Kennedy v. Grace, etc., Co., 92 Fed. 116; Petaja v. Aurora Iron Min. Co., 106 Mich. 463; Beique v. Hosmer, 169 Mass. 541; Porter v. Silver Creek, etc., Coal Co., 84 Wis. 418; Clark v. Liston, 54 Ill. App. 578.] Indeed, the Amer. & Eng. Ency. of Law, vol. 20 (2 Ed.), at page 57, states a well-formulated rule on this subject in the following language: "If the place is unsafe because of the nature of the work, and a servant suffers injury in consequence thereof, he cannot hold the master liable, provided reasonable precautions were taken by the master to avoid injury. The risk of injury from such cause is one of the risks assumed by the servant." It seems that this rule is conclusive of the case at bar. Here, the injury which befell the respondent came upon him from a falling stone resultant of a blast and was incident of the employment. It came about from the nature of the work being performed at the quarry and the master, having given plaintiff and

all others employed warning thereof by causing one of its employees to sound the usual alarm by whooping, prior to the exploding of the blast, which was a reasonable precaution taken by the master under the circumstances of the case to aid respondent in protecting himself from injury, the respondent is certainly precluded from recovery thereby.

What has been said above on the question of non-liability of the appellant for the injury in this instance is treated of in many cases as arising by virtue of the non-application of the principle of safe place because the danger from which the injury arose was but a passing danger, temporary in its nature, and arose from the prosecution of the work itself. Upon the theory that the principle of safe place does not apply in such cases, recovery has been denied in the cases above cited. The law therefore did not require the master to furnish a safe place as against such temporary dangers and the failure to provide such safe place was not negligence on its part.

The same result as that predicated upon the non-application of the principle of safe place, is usually reached in the application of the principle of assumption of the risk. That doctrine can be applied to this case with equal force as that last above discussed, for upon entering the employment at the quarry, respondent assumed the risks which were ordinarily incident to the employment in which he engaged and in addition to such risks, by entering or continuing in the employment without complaint, he assumed the risks of extra hazards, the dangers of which he knew and understood, or the dangers of which were obvious. [Lee v. Railroad, 112 Mo. App. 372, 87 S. W. 12; Mathias v. K. C. Stock Yards Co., — Mo. App. —, 84 S. W. 66; Dean v. St. Louis Woodenware Co., 106 Mo. App. 167, 80 S. W. 292; Browning v. Kasten, 107 Mo. App. 59, 80 S. W. 354; Adolff v. Columbia Pretzel & Baking Co., 100 Mo. App.

199, 73 S. W. 321; Bradley v. Railroad, 138 Mo. 293, 39 S. W. 763; Steinhauser v. Spraul, 127 Mo. 541, 28 S. W. 620, 30 S. W. 102; Epperson v. Postal Tel. Co., 155 Mo. 346, 50 S. W. 795, 55 S. W. 1050; Fugler v. Bothe, 117 Mo. 475, 22 S. W. 1113; Aldridge, Admr., v. Midland Blast Fur. Co., 78 Mo. 559; Sullivan v. Mfg. Co., 113 Mass. 396.] According to the testimony of the respondent, he knew full well the resultant falling of stones after these blasts and gave testimony to the effect that such stones, as large as his fist and smaller, had fallen around his place of refuge on the bridge frequently theretofore and that he had seen them fall from one hundred to three hundred yards in the river from block shots. It is a matter of common knowledge that a falling stone as large as one's fist, is dangerous in the extreme and liable to produce death by striking upon the head. Respondent then, had full knowledge of the dangers and by continuing in the service thereafter, he would be precluded from recovery by virtue of assuming such risk in continuing therewith, with full knowledge of its dangers. But aside from this, we are not compelled to depart from the primary rule of assumption of the risk to find the law which would preclude a recovery in this case for the stone which inflicted the injury upon respondent came as a result of a blast exploded in the necessary discharge of the work at the quarry and without negligence on the master's part. We all know that in the operation of stone quarries, blasts are discharged for the purpose of raising the stone from its stratum and that as a result of such explosion, fragments of stone, large and small, are thrown high into the air; that gravitation will bring them to the earth with such force as is liable to inflict severe injuries to one in their path. The risk attendant upon the work which is so prosecuted, is not an extra hazard, but is essentially and necessarily an ordinary hazard and risk of the employment and is therefore assumed by the servant by implication in his contract of hire.

The United States Court of Appeals for the Eighth Circuit, in the case of Browne v. King et al., 100 Fed. 561, said:

"In entering the employment of the defendant the plaintiff assumed the ordinary risks incident to the employment engaged in. These risks were such usual hazards, dangers and perils as belonged to the peculiar occupation of blasting rock with dynamite, including the carelessness of those engaged with him in the same work and employment. The employer was bound to furnish a reasonably safe place and appliances with which to do the work. But where the nature of the business is extremely dangerous, and conditions are necessarily continually changing by reason of placing and setting of blasts whereby dangerous conditions arise continually, through the acts of the servant, without the knowledge of the master, the employer cannot be held responsible therefor without his fault, but such temporary dangerous conditions arise from the nature of the employment, and are among the natural and ordinary risks and hazards attending the employment, for which the defendant is not liable."

See also the following cases: Livengood v. Joplin, etc., L. & Z. Co., 179 Mo. 229, 77 S. W. 1077; Epperson v. Postal Tel. Co., 155 Mo. 346, 50 S. W. 795, 55 S. W. 1050; Bradley v. Railroad, 138 Mo. 293, 39 S. W. 763; Fugler v. Bothe, 117 Mo. 475, 22 S. W. 1113; Steinhauser v. Spraul, 127 Mo. 541, 28 S. W. 620, 30 S. W. 102; Junior Elec. Co., 127 Mo. 79, 29 S. W. 988; Aldridge v. Midland Blast Furn. Co., 78 Mo. 559; Lee v. Railroad, 112 Mo. App. 372, 87 S. W. 12; Bunt v. Sierra, etc., Gold Min. Co., 138 U. S. 483; Davis v. Mining Co., 117 Fed. 122; Finalyson v. Utica, etc., Min. Co., 14 C. C. A. 492; Railroad v. Jackson, 65 Fed. 48; Meehan v. Speirs Mfg. Co., 172 Mass. 375; Whittaker v. Bent, 167 Mass. 588; Durst v. Carnegie Steel Co., 172 Pa. St. 162; O'Connell v. Clark, 48 N. Y. 74; Sullivan v. India Mfg.

Co., 113 Mass. 396; 20 Am. & Eng. Ency. Law (2 Ed.), 57.

From what we have said, it is apparent that the judgment cannot stand. The injury which the poor man received was severe and permanent and no doubt hastened his death, but under the law as it is, there was no obligation upon the employer to compensate him or his estate therefor and we must apply the principles of law as we find them in the adjudicated cases, regardless of the feelings of sympathy which we may entertain for the injured party.

It is wholly unnecessary to discuss the question of contributory negligence so ably presented in the briefs. The judgment must be reversed. It is so ordered. *Bland, P. J.*, concurs, *Goode, J.*, absent.