BLOOMFIELD, Respondent, v. WORSTER CON-
STRUCTION COMPANY, Appellant.

St. Louis Court of Appeals, April 24, 1906.

1. **MASTER AND SERVANT: Safe Place to Work: Assumption
of Risk: Hazardous Employment.** Although the master must
exercise ordinary care in furnishing his servant a safe place
to work, he is not required to furnish his servant a safe place
when the danger is temporary and transitory only and arises
from the hazard of the work itself which is known to the serv-
ant; while this is termed an exception to the rule of safe place,
it amounts to no more than that the servant assumes the risk
ordinarily incident to the employment, because the hazard in
that case is an ordinary incident to the employment.

2. ——: ——: ——: ——. But where the work is hazard-
ous and the master undertakes to make it reasonably safe in a
manner not under the control of the servant, it becomes the
master's duty to use ordinary care in carrying out the undertak-
ing.

3. ——: ——: ——: ——. Where a carpenter, under the
direction of the foreman of his employer, was engaged in tear-
ing down a two-story building and was removing the second-
story joists therefrom, and where the foreman had undertaken
to brace and secure the structure from falling by leaving joists
at intervals for that purpose, the carpenter had a right to rely
upon the care of the foreman in making the bracing sufficient,
and in an action for injuries received on account of a fall caused
by the insufficient bracings, the questions whether the master
exercised ordinary care to render the place safe and whether
the plaintiff was negligent in performing his work, were prop-
erly submitted to the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse
A. McDonald,* Judge.

AFFIRMED.

*McKeighan, Wood & Watts* and *Edwin W. Lee* for
appellant.

The court erred in overruling the demurrer to the
evidence for the following reasons:    (a)    There was no

negligence on the part of the defendant shown, although two specific acts of negligence had been allegd. The evidence, therefore, wholly failed to support the allegations of the petition, and, since no negligence was shown, the demurrer to the evidence should have been sustained. Ziegenmeyer, Admr., v. Goetz L. & Co., 88 Mo. 139. Harper v. Railway, 187 Mo. 575, 86 S. W. 99; Chandler v. Glass Co., 174 Mo. 321, 73 S. W. 502; Fuchs v. City of St. Louis, 167 Mo. 620, 67 S. W. 610. (b) The plaintiff was injured by one of the usual risks incident to the business in which he was engaged. He himself was engaged in tearing down the building, and consequently the conditions were changing as the work progressed, which made it impossible for the defendant to furnish such a safe place for the plaintiff in which to do his work, as could be furnished in a factory, or other place, where conditions remain steadily the same. By entering and continuing in the employment of the defendant, the plaintiff assumed the risk of injuries resulting from the ordinary hazards of the business, by one of which he was injured. Bradley v. Railway, 138 Mo. 293, 39 S. W. 763; Armour v. Hahn, 111 U. S. 318; Browne v. King, 100 Fed. 561.

*Brewer & Wolf* for respondent.

STATEMENT.—The Inside Inn was a two-story frame hotel building of temporary character, located upon the ground of the Louisiana Purchase Exposition Company of 1904, constructed and maintained for the purpose of accommodating World's Fair visitors. At the close of the exposition, defendant, a contractor, undertook to dismantle and remove the same. Plaintiff was a laborer in its employ, removing joists therefrom, at the time of his injury. As said, the building was a frame structure, two stories in height, of nine feet each. Its length was something over one hundred feet and its width about twenty-six feet. At the time of the injury, plaintiff,

with other laborers, was engaged in the defendant's service under the direction of its foreman, in removing the floor joists of the second story. The ceiling joists above the same story and the floors of the second story had been removed, and the work of removing the joists of the second story was then in progress. On the morning of the day of the injury, the foreman in charge had directed the plaintiff and others to commence the work of removing the joists at the north end of the building and work south, leaving one joist intact every twenty feet as a bracing or support, and in accordance with these instructions, the plaintiff and others labored until they had removed the same, except one every twenty feet, and thus the joists were removed from the ceiling of the second story and for a distance of about ninety feet of the ceiling of the first floor of the second story, when the plantiff was warned by the foreman not to take out any more joists as the building was falling, or about to fall. Simultaneously therewith, plaintiff observed the walls swaying and ran across the joists still remaining, in haste, seeking to find a place of safety, and endeavoring to pass below, between two of the joists, was caught in some manner and thereby precipitated to the floor or ground beneath, whereby he was injured. The walls of the building about this time, lodged in a tree and were prevented from further falling.

The negligence alleged and relied upon for a recovery is that the defendant failed to exercise ordinary care to provide the plaintiff a reasonably safe place in which to perform his labor in that it failed to properly brace or support the walls so as to prevent their falling while the work of removing the joists was in progress, and second, that it failed to warn the plaintiff that the walls were likely to fall in time to have enabled him to seek a place of safety.

On a trial in the circuit court, the verdict and judgment were for the plaintiff. Defendant appeals. The

only error assigned is that the trial court erred in refusing defendant's peremptory instruction for a verdict.

NORTONI, J. (after stating the facts).—Generally speaking, it is the duty of the master to exercise ordinary care to furnish the servant a reasonably safe place, where, by exercising ordinary care on his part, he can perform the labors assigned with a reasonable degree of safety to himself, subject only to the risks ordinarily incident to the employment. But it is said that this well-settled rule has an equally well-settled exception, and that is, that the master is not required to furnish the servant such a safe place in which to work when the danger is temporary and transitory only, and arises from the hazard and nature of the work itself and is known to the servants. This no doubt is true. What is here termed an exception to the rule of safe place, however, amounts to no more than the doctrine that the servant assumes the risks ordinarily incident to the employment, inasmuch as the rule of safe place is abrogated thereby only as to such risks as arise from the nature and hazard of the work and are therefore ordinarily incident, etc. [Ziegenmeyer v. Goetz Lime & Cement Co., 113 Mo. App. 330.] And it has been said that the rule of safe place does not impose upon the master the duty of keeping a building which is being erected, or an embankment which is being undermined, in a safe condition every moment of the progress of the work, so far as its safety depends upon the due performance of that work by the servant and his fellows, inasmuch as under the peculiar facts of those cases, the work itself renders the place otherwise safe, to be unsafe. [Armour v. Hahn, 111 U. S. 313-318; Bradley v. Ry. Co., 138 Mo. 293-302, 39 S. W. 763; Rigsby v. Oil Well Supply Co., 115 Mo. App. 297, 91 S. W. 460-466; Gulf, etc., Ry. Co. v. Jackson, 65 Fed. 48-50; Ziegenmeyer v. Goetz Lime & Cement Company, 113 Mo. App. 330, 88 S. W. 139, and

118 App—17

cases therein cited.] And this amounts to no more than that the servant assumes the risk ordinily incident to the employment, for in the labor of making a previously safe place one of unsafety, there is essentially a hazard incident thereto which would render it most unreasonable and unjust to affix an obligation upon the master to maintain the place reasonably safe in the absence of an assumption on his part to do so.

With the rule and its exception thus stated, we are in full accord, and did the record before us show no more than that the plaintiff after having undertaken to preform the labor of removing the joists, and to assist in tearing down the building, was simply assigned by the employer to labor thereat and was injured as detailed by him because no sufficient supports or bracings were furnished and placed by the defendant, in the absence of the defendant having undertaken to furnish such, we would be forced to the conclusion at once that under such circumstances, the rule of safe place would not obtain here so as to affix any obligation upon the master to render the same reasonably secure for the performance of such labors and that therefore his injury resulted as a hazard ordinarily incident to the employment in which he had embarked and voluntarily assumed by his not having required the master to furnish supports or bracings for the building while the labor was being performed, inasmuch as the work he had undertaken to do and was performing when injured, was rendering an otherwise safe place, to be unsafe, and the injury resulted from a risk encountered as incident thereto. The application of this principle to this case, under those circumstances, however, would depend entirely upon the fact that the servant had voluntarily entered the employment without requiring the master, and the master not having assumed, to exercise due care to furnish a place reasonably safe for performance of the labor. But that is not the case before the court. There is another fact

and a most important fact in this connection for consideration, which, in the opinion of the court, removes it from the influence of the principle stated and places it within the purview of the rule of safe place in a relative sense; and that is, the master had, by its foreman on the ground, retained control of the work, was then and there directing how it should be done and had undertaken to furnish bracings and supports for the building by having directed that joists be permitted to remain every twenty feet throughout the same for that purpose. Under these circumstances, the master having assumed this obligation, it became its duty to exercise ordinary care to provide such reasonable precautions as were compatible with the nature and character of the work to insure a reasonable degree of safety under the attending circumstances. [Bradley v. Ry. Co., 138 Mo. 293-304.] This duty the law imposes upon the master in this case, in view of the fact that he had assumed it, for the master was there directing the work and in partial discharge of this duty, had directed, by its foreman, that an occasional joist be not removed, as indicated, clearly for the purpose of supporting the building. Now, under these circumstances, when the master is present on the ground, overseeing and directing the work and bracing the building, as in other cases, it is the servant's duty to exericse ordinary care for his own protection. This done, it is his duty to obey orders and perform the service, relying upon the master to do his duty toward exercising the same degree of care to provide reasonable precautions to prevent injuries from befalling him. The plaintiff in this case knew the master was supporting the building by means of the occasional joists remaining twenty feet apart, and had the right to rely upon what is fairly presumed to be the superior judgment of the master, that these bracings were sufficient to render it secure unless, by the exercise of ordinary care on his part, he could have discerned the danger to himself.

The court is therefore of the opinion that the question for plaintiff's safety was, together with that of the exercise of ordinary care on his part in working thereabout, properly referred to the jury. Wherefore, the judgment will be affirmed. It is so ordered. *Bland, P. J.*, and *Goode, J.*, concur.