## JOHN COONEY, Respondent, v. LACLEDE GAS LIGHT COMPANY, Appellant.

St. Louis Court of Appeals.    Argued and Submitted November 5, 1914.    Opinion Filed December 8, 1914.

1. MASTER AND SERVANT: Safe Place to Work: Hazardous Employment. The duty of the master to furnish his servant a reasonably safe place in which to work does not require him to provide against hazards such as are ordinarily incident to the employment, as where the danger is temporary and arises from the hazard and progress of the work itself; and this rule is particularly applicable to dangers arising out of the demolition of structures.

2. ———: Injury to Servant: Safe Place to Work: Sufficiency of Evidence. In an action for injuries to an employee engaged in demolishing a platform, caused by his stepping on a plank on the platform, fastened to a joist only by a cleat, which gave way beneath him, held that, in view of the fact that the section of the platform where plaintiff was injured was not being demolished at the time and that the plank had not been rendered unsafe by any act connected with the demolition, it was not plaintiff's duty to make a careful inspection of the platform, but he had a right to assume that it was reasonably safe, from the fact that he was ordered to work upon it; held, further, in view of these facts, that the duty rested upon the master to see that the platform was reasonably safe, and the evidence disclosing that a slight inspection would have disclosed that the plank was unsafe, the case was one for the jury.

3. ———: ———: ———: Instructions. In an action for injuries to an employee engaged in demolishing a platform, caused by his stepping on a plank of the platform, fastened to a joist only by a cleat, which gave way beneath him, an instruction that plaintiff could recover if defendant knew, or by ordinary care could have known, of the condition of the plank, and if plaintiff did not know, or by ordinary care could not have known, that the plank was not supported by a cross plank and was unsecurely fastened by cleats, was not vulnerable to the objection that it erroneously allowed a recovery for the failure to inspect a structure that was in the process of demolition, since, at the time plaintiff was injured, he was not tearing down the part of the platform where he was injured, but was using it in the course of his employment, under the assumption that it was reasonably safe.

4. ————: ————: ————: **Instructions.** In an action for injuries to an employee engaged in demolishing a platform, caused by his stepping on a plank of the platform, fastened to a joist only by a cleat, which gave way beneath him, an instruction that plaintiff could recover if defendant knew, or by ordinary care could have known, of the condition of the plank, and if plaintiff did not know, or by ordinary care could not have known, that the plank was not supported by a cross plank and was unsecurely fastened by cleates, was not vulnerable to the objection that it left it to the jury to find that defendant could, and plaintiff could not, by ordinary care, have discovered the insecure plank, when there was no evidence that defendant had any superior opportunity to that of plaintiff for making the discovery, since the duty to inspect the work was on defendant, and not on plaintiff.

5. ————: ————: **Assumption of Risk.** In order to invoke assumption of the risk as a defense, in an action by a servant for personal injuries, it must appear that the risk was incident to the employment and did not arise from the master's negligence and that the servant knew of the danger that caused the injury.

Appeal from St. Louis City Circuit Court—*Hon. Daniel D. Fisher,* Judge.

Affirmed.

*Percy Werner* for appellant; *Garner W. Penney* of counsel.

(1) The court erred in refusing to direct a verdict for the defendant, and in overruling motion for new trial. (a) The duty of a master to furnish a safe place to work does not require him to provide against hazards such as are ordinarily incident to the employment, as where the danger is temporary and when it arises from the hazard and progress of the work itself. This rule is particularly applicable to dangers arising out of the demolition of structures. Ziegenmeyer, Admr., v. Goetz Lime & Cement Co., 113 Mo. App. 330; Henson v. Packing Company, 113 Mo. App. 618, 621; Bloomfield v. Worster Construction Co., 118 Mo. App. 254; Clark v. Liston, 54 Ill. App. 578;

Chicago Edison Co. v. Davis, 93 Ill. App. 284; Merchant v. Mickelson, 101 Ill. App. 401; Western Wrecking · Co. v. O'Donnell, 101 Ill. 492.; Chicago & Marion Coal Co. v. Reese, 126 Ill. App. 567; William Grace v. Kane, 129 Ill. App. 247; Armour v. Hahn, 111 U. S. 318; 1 Labatt, Master and Servant, sec. 259; Thompson on Negligence, sec. 3876. (b)  An exception does obtain where the injured servant, engaged in such work is acting under the direct orders of a foreman, who undertakes to make it safe, in which case the servant is not bound to make inspection to determine the safety of his place of work; but 'the facts of this case do not bring it within the exception. Wesner v. Railroad, 163 S. W. 298; Bloomfield v. Worster Const. Co., 118 Mo. App. 254.  (2)  The first instruction given to the jury on behalf of the plaintiff was unwarranted by the evidence, erroneous and misleading.  See authorities cited under point 1.

*John B. Dempsey* for respondent.

The court properly directed the jury, for the reason: That while it is true that an exception to the general rule requiring the matser to provide his servant with a safe place to work, arises, "Where the danger is temporary, and when it arises from the hazards in the progress of the work itself," and that the rule, as modified, "is particularly applicable to dangers arising out of the demolition of structures," yet we have no such case here.  We have here no state of facts to which the following definition will apply: "The rule of safe place does not apply to a wrecking job, for the reason that under the conditions of tearing down, the work itself renders unsafe a place otherwise safe." Bloomfield v. Worster Construction Co., 118 Mo. App. 254.  For in the labor of making a safe place one of unsafety, there is essentially a hazard incident thereto which the servant assumes.  Work which in its

nature for the time being renders the place of performance to some extent insecure, justifies the exception to the rule of safe place.  Supra, 258; Rigsby v. Oil Well Supply Co., 115 Mo. App. 297; Gulf, Etc., v. Jackson, 65 Fed. 48-50; Bradley v. Railroad, 138 Mo. App. 302; Clark et al. v. Liston, 54 Ill. App. 576; Grace Co. v. Kane, 129 Ill. App. 247; Trulayson v. Utica Mining & Milling Co., 67 Fed. 507.

REYNOLDS, P. J.—This is an action by the plaintiff to recover damages for injuries alleged to have been sustained by him while engaged in tearing down a platform upon the order of a representative of defendant, the particular work in which plaintiff was engaged at the time being the removal of the floor and footwalk from the platform, which had been used for holding coal as it was unloaded from cars.  It is charged that while plaintiff was engaged in removing the planks comprising the platform, and while he was carrying a heavy plank which he was about to lower to the ground, he stepped upon a plank of the platform and the plank gave way, by reason of that plank not reaching the joist on the outside of the supporting posts and there being no joists on the inside of the posts; that this short plank did not have any support save cleats nailed underneath it and to the plank next to it, and was not strong enough by reason thereof to support the weight of plaintiff with the plank he was at the time carrying.  It is averred that defendant was negligent in that it knew, or by the exercise of orlinary care could have known, that the joist above described was not in place to support the end of the plank, and that in consequence thereof the short plank was without adequate support for the load which plaintiff placed upon it, and that the platform was not a reasonably safe place for plantiff to work.  It is further averred that by reason of the negligence of defendant as above set forth and of the unsafe condition

of the platform or walk when he stepped upon the plank, it gave way with his weight and the added weight of the load he carried, and that plaintiff was precipitated to the ground, injuring him as described, so that for more that two months following the fall he suffered a partial paralysis of the hand and arm and was unable to hold or lift anything, and has been unable to follow his usual or any vocation, has lost wages as a laborer, will be unable to perform labor in the future, has expended and become obligated for large sums of money for medical and surgical attendance and medicines, and is permanently injured and has suffered and will suffer in the future great pain of body and anguish of mind, to his damage, etc.

The amended answer, admitting the incorporation of the defendant and that it was engaged in business as alleged, and denying every other allegation in the petition, pleads contributory negligence on the part of plaintiff and assumption of risk by him.

A trial before the court and a jury resulted in a verdict for plaintiff, from which defendant, saving exceptions to the action of the court in overruling its motion for a new trial, has duly perfected its appeal to this court.

The errors assigned here are to the refusal of the court to direct a verdict for defendant, and to error in the first instruction given on behalf of plaintiff, it being claimed that the latter was unwarranted by the evidence and was erroneous and misleading.

There was evidence tending to prove that plaintiff, a common laborer in the employ of defendant, was working for it on its premises, along which a switch track of a railroad ran, and along which track defendant had constructed a platform on which coal delivered by car to it was unloaded. On the day of the accident the foreman came to plaintiff and told him that when he was through working at the place

where he was then engaged to "come along" with him. They went back across the west side of the railroad and were joined by another workman and went to this platform. The platform was about nine feet wide and from 100 to 120 feet long, the south end of it about twelve or fourteen feet from the ground, the north end about nine feet above the ground. The flooring of this platform consisted of heavy 2x10 boards, sixteen feet long. The foreman directed plaintiff to take all of the flooring off and to "hurry on and do it." Plaintiff, assisted by the other workman, started at the south end of the platform, working toward the north. He walked to the far end and, carrying the boards to the north end, handed them down, board by board, to the man on the ground below who was helping him. In the course of his work he had torn down the platform to within two sixteen-foot board lengths of the north end. There were about three boards lying across this north end on top of the platform. He walked out and picked up the first one, which was lying there and handed it down, then went to the second and let it down, and picked up the third, which was an oak board about eighteen feet long, walked out with that and stood with both feet on the outer plank of the platform, standing there in position to hand this board down, when the board upon which he was standing gave way under him and he was precipitated to the ground and apparently lay. there unconscious for awhile. It was in evidence that the board upon which plaintiff had stepped and which had given way did not rest upon the joist at its north end and was not supported at that end by the crosspieces of the platform, but fell short of that crosspiece or joist and was supported at the end by a cleat nailed under it and to the adjoining plank, and that the weight of plaintiff, with the added weight of the plank he was carrying, had caused the nails in the cleat to give way, the cleat

186MoApp11

parted from the board, and so it fell, carrying plaintiff with it. This is a brief but, as we think, a fair statement of the accident.

Plaintiff testified that he had no knowledge whatever of the manner in which this particular plank was supported, did not know that it was only supported by this cleat and that the end of it did not rest on anything; and in point of fact, he testified that he had not made any examination of the platform but had worked where he was told by the foreman to work. This was practically the evidence given by plaintiff, he being corroborated in it by the man who was working with him at the time. In addition to this there was testimony as to the nature and extent of his injuries, expenditures, etc.

At the conclusion of plaintiff's evidence, defendant moved for a directed verdict. This the court refused, defendant excepting.

On its part, the testimony of defendant, being that of the foreman, was to the effect that the foreman had left to the plaintiff the detail of the work; had not told him to go up on the platform; that he could have done the work just as well from under it as to have gone on top of it, and that the foreman had no knowledge of the manner in which this board was fastened, had no knowledge of the fact that its end, instead of resting on joists or crosspieces, was supported merely by cleats or a cleat to another board or plank adjoining it.

At the conclusion of the testimony defendant renewed its demurrer, which was overruled.

At the instance of plaintiff the court gave an instruction, the only part of which now complained of is here underscored and is to the effect that if the jury found from the evidence that while plaintiff was engaged in removing the floor planks, he stepped upon a plank in the floor; that said plank was not supported at the end near where plaintiff stepped thereon by

a cross plank nailed to the upright posts forming the frame work of the platform, *or that the fastening of that floor plank to the next floor board by cleats, if the jury found that it was so fastened, was not sufficiently secure to bear plaintiff's weight while discharging his duties as directed; that defendant, by its agents, foremen or overseers, knew, or by the exercise of ordinary care for the safety of its employees, could have known the condition of the floor and supports.* "*And if you further find and believe from the evidence, that plaintiff did not know, or that by the exercise of ordinary care he could not know that the said floor plank was not supported by a cross plank and that the said plank was insecurely fastened by cleats,*" etc., then plaintiff is entitled to recover, unless, under other instructions given, the jury find for defendant.

At the instance of plaintiff the court also instructed the jury as to the measure of damages.

At the instance of defendant it gave two instructions, one to the effect that if the jury found from the evidence that plaintiff was directed to demolish the platform in question, and given full control of the work, to choose his own methods and his own men to help him, and that plaintiff was injured by one of the dangers incident to his employment in wrecking the platform, their verdict should be for defendant; and that if the jury found from the evidence that plaintiff sustained the injuries of which he complains by reason of his own negligence directly contributing thereto, in getting upon, or standing upon, one of the planks of the platform which he was engaged in wrecking, if the jury find from the evidence that he was so engaged, because the plank had no sufficient support or underpinning at the time, and the absence of such support or underpinning he might, by the exercise of ordinary care for his own safety, have known, and by

the exercise of such care have avoided the injury, their verdict should be for defendant.

The court of its own motion instructed the jury as to the meaning of ordinary care and as to the number of jurors necessary to concur in a verdict. It refused instructions asked by defendant in the nature of demurrers to the evidence as also one which is to the effect "that the law which requires a master to furnish his servant a safe place in which to work does not require the master to make a structure which is in process of demolition or destruction safe."

Considering the first proposition made by the learned counsel, that there is no evidence in the case warranting its submission to the jury, we cannot agree to its correctness. It is true that the duty of the master to furnish a reasonably safe place to work does not require him to provide against hazards such as are ordinarily incident to the employment, as where the danger is temporary and when it arises from the hazard and progress of the work itself, and it is true that this rule has been held as particularly applicable to dangers arising out of the demolition of structures. So this court held in Zeigenmeyer, Admr. v. Goetz Lime & Cement Co., 113 Mo. App. 330, 88 S. W. 139, and Bloomfield v. Worster Construction Co., 118 Mo. App. 254, 94 S. W. 304, as also the Kansas City Court of Appeals in Henson v. Armour Packing Co., 113 Mo. App. 618, 88 S. W. 166. So it has been held by the courts of Illinois in cases cited by counsel, and by the Supreme Court of the United States in Armour v. Hahn, 111 U. S. 313. So too the text-writers hold, as see 3 Labatt's Master & Servant (2 Ed.), sec. 1177; 4 Thompson on Negligence (Ed. 1904), sec. 3876. But this rule is not applicable to the case before us. This plaintiff was not injured in consequence of a defect or imperfection or weakness in this platform which had been brought about while the platform was being torn down, or in consequence of tearing it down. The

fatal weakness in the platform was there when plaintiff commenced his work, and plaintiff was not engaged in tearing down this section of the platform; in point of fact, he had done no work in the way of demolition of that part of it; on the contrary, he was using it as a place on which to stand and over which he could walk while lowering the planks taken from other parts of the platform. Neither the plank on which he stepped nor that part of the platform had been disarranged or rendered unsafe by any act connected with the removal or tearing down of the platform. It was unsafe from defects inherent to its own manner of support and construction. It was not within the obligation of plaintiff, as an employee, to make a careful inspection of this platform upon which he was ordered to do his work. He had a right to assume that it was reasonably safe from the fact that he was ordered to work upon it, as he testifies was the case. But the duty primarily and clearly was upon the employer, through its agent who was representing it in the general supervision of this work, to see that this platform upon which its employees were required to work was reasonably safe. It is clear that even slight inspection would have shown that this plank was supported at one end only by a cleat nailed to it and the adjoining board and that its end did not rest on anything. So it would be clear that the strain of either a very heavy man or of any heavy burden, when that burden was cast upon the loose, unsupported end of this plank, would be apt to cause it to fall. Whether that was the condition was the question submitted to the jury; that there was evidence to support it is too clear for argument.

We have italicized the particular parts of the instruction given at the instance of plaintiff and on which error is now assigned. It is objected to this part of the instruction that it, in effect, tells the jury that it was the duty of defendant, by its agents, fore-

men or overseers, to have inspected the old platform which was to be wrecked in order to discover the loose or insufficiently supported boards, if they could have been discovered by the exercise of ordinary care. It is said that this is not the law, Bloomfield v. Worster Construction Co., supra, being cited in support of this and as holding that where the work is hazardous and the master undertakes to make it reasonably safe in a manner not under the control of the servant, then it becomes the master's duty to use ordinary care in that behalf, otherwise not. It is further said that it is not charged, nor is there the slightest pretense in the evidence that defendant interfered in any way with the work, or that plaintiff was in any way induced to rely on, or that he did in fact rely on, defendant or its supervisor to avoid any of the dangers which might beset the work; that the work here done could not be said to be even hazardous and that under the facts of this case no such duty rested on defendant to search out loose boards, as this instruction told the jury existed, and for this reason it is claimed the instruction is erroneous. We do not put that construction upon it. All that this instruction tells the jury is, that the duty of the employer is to furnish a reasonably safe place for its employees to do this work. There does not appear to have been anything extra hazardous about this particular piece of work, nothing to show that the platform was being pulled down because it was insecure, but, so far as the evidence shows, it was simply being removed in the ordinary course of defendant's business. Why this was so, does not appear and no suggestion arises from the testimony that the work upon which plaintiff was engaged was in any way hazardous. Whatever hazard might have occurred in the mere fact of tearing down the structure has no bearing here, because at the time, and when plaintiff was injured, and at the place where he was injured, he was not tearing down this platform

but was using it, as he had a right to do, in the course of his work, under the assumption that it was reasonably safe for the work he was engaged in.

The second objection urged to this instruction is that the court leaves it to the jury to find that defendant could and plaintiff could not, by the exercise of ordinary care, have discovered the unsupported floor plank. It is claimed that under the evidence this was unwarranted and that there is not the slightest evidence that anybody connected with the defendant had any opportunity superior to that of plaintiff for making the discovery. The trouble with this contention is that the duty to inspect the work and to see that it was reasonably safe was on defendant, not on plaintiff. We do not think that this instruction is subject to the criticism made on it, and considering it in connection with the instructions the court gave at the instance of defendant, we think that the case was properly submitted and that it was clearly a case for the jury.

It is said by counsel for appellant, "If under the facts of this case plaintiff did not assume the risk of the very mishap from which he suffered, then in our humble opinion, the old doctrine of assumption of the ordinary risks incident to a particular service, must be rooted out of our law and a new one of insurance against injury must be substituted by our courts for it."

Counsel is unduly alarmed. It is true that the doctrine of assumption of risk has been very much limited in its application by our Supreme Court, but as pointed out by Judge Faris, in Patrum v. St. Louis & S. F. R. Co., 259 Mo. 109, 168 S. W. 622, under the name of contributory negligence, it is still recognized as in force. But it has no application here. To invoke assumption of risk as against the claim of this injured employee, it must appear that the risk was one incident to the employment and which did not arise from the employer's negligence. Absent that, there is no

assumption. Here there was no knowledge on the part of the plaintiff of the hidden danger and hence no assumption of risk.

Finding no reversible error, the judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.