ERASTUS HUSKEY, Respondent, v. HEINE
SAFETY BOILER COMPANY, Appellant.

**Springfield Court of Appeals, January 30, 1915.**

1. **MASTER AND SERVANT: Injuries: Place of Work: Petition
   and Evidence Examined.** Action by servant against master
   for injuries occasioned by alleged negligence in not furnishing
   a safe place in which to work. Petition examined and evidence
   reviewed. *Held*, that the case made by plaintiff does not estab-
   lish any negligence alleged in the petition and that the submis-
   sion of the case to the jury was error.

2. ————: **Injury to Servant: Place of Work: When Master
   Liable for Negligence.** Action by servant against master for
   injuries caused by a fall from the edge of a smokestack while
   servant was attempting to place a bolt in the stack while
   standing on the edge of an opening therein. The master was
   not negligent in failing to provide a circular platform for the
   use of the servant in constructing the stack, where it does not
   not appear from the evidence that under the circumstances
   outlined a platform could have been used.

3. ————: **Injuries to Servant: Apparent Risk: Assumption of.**
   Servant was injured by a fall from the edge of a smokestack
   which he was assisting to erect. Being familiar with the sur-
   roundings and conditions and the attendant risk being apparent
   and the character of the work temporary, the servant assumed
   the risk of an injury as an incident of the work.

4. ————: ————: **Safe Place Rule: Exceptions.** An exception
   to the safe place rule obtains where in the erection of structures,
   such as smokestacks, the conditions are changing, the danger is
   temporary and arises from the progress of the work and is
   known to the servant.

Appeal from Butler County Circuit Court.—*Hon. J. P.
Foard*, Judge.

REVERSED AND REMANDED.

*Sheppard, Green & Sheppard* for appellant.

(1) The court should have given appellant's in-
struction in the nature of a demurrer to the evidence

at the conclusion of respondent's evidence for the reason that respondent failed to make a prima-facie case against appellant. (2) Respondent's own case shows that he was guilty of contributory negligence in this: That he chose a dangerous way instead of a safe way of putting the bolt in the bolt hole and therefore is not entitled to recover. Moore v. Railroad, 146 Mo. 572; Hulett v. Railroad, 67 Mo. 241; George v. St. Louis Manufacturing Co., 159 Mo. 333; Smith v. Box Company, 193 Mo. 715, 734-5; 26 Cyc., p. 248; Sparks v. Railroad, 31 Mo. App. 111; Doerr v. Brewing Ass'n, 176 Mo. 547; Craig v. Railroad, 54 Mo. App. 523; Pohlmann v. American Car & Foundry Co., 123 Mo. App. 219. (3) Respondent was as familiar with the conditions and the dangers surrounding the place at which he was working when he was injured as was appellant's foreman, and therefore assumed whatever risks there were incident to his employment. Fugler v. Bothe, 117 Mo. 475 and cases cited; Pohlmann v. American Car F'dy. Co., 123 Mo. App. 219; Keegan v. Kavanaugh et al., 62 Mo. 232; Letanovsky v. Shoe Co., 157 Mo. App. 120; Harris v. Railroad, 146 Mo. App. 524; Holloran v. Iron & Foundry Co., 133 Mo. 470; Knorpp v. Wagner, 195 Mo. 647; Steinhauser v. Spraul, 127 Mo. 541; Harris v. Railroad, 250 Mo. 567. (4) The court erred in giving to the jury respondent's instruction number 1. Said instruction does not properly declare the law as applied to the facts in the case. It assumes that it was practical to have placed a circular platform inside the smokestack in question for respondent to stand on while working when there was evidence to the contrary. Burrows v. Likes, 180 Mo. App. 447, 166 S. W. 643; Abbott v. Mining Co., 112 Mo. App. 550, 556.

*Abington & Phillips* for respondent.

(1) Defendant's foreman ordered plaintiff to a place that said foreman knew to be dangerous and at

which place the general superintendent had ordered said foreman to build a scaffold; said order to plaintiff was negligent and the court did not err in refusing defendant's peremptory instruction in the nature of a demurrer to the evidence. Schultz v. Moon, 33 Mo. App. 329; Musick v. Packing Co., 28 Mo. App. 322; Carney v. Brewing Co., 150 Mo. App. 437; Brueggemann v. Carondelet, 153 S. W. 559; Curtis v. McNair, 173 Mo. 270; Erwin v. Telephone Co., 158 S. W. 913; Day v. Company, 114 Mo. App. 479; Ludwig v. Company, 156 Mo. App. 117. (2) Even though plaintiff knew that there was no platform or other device in the stack to prevent him from falling and that such fact made the place to which he was ordered dangerous still, he was not guilty of contributory negligence in going to the place ordered and in attempting to do the work required of him unless the place to which he was ordered was so glaringly dangerous and threatening that a reasonably prudent person would not have attempted to work in and about the same. Loftis v. Kansas City, 156 Mo. App. 683; Morris v. Railroad, 168 S. W. 323; Howard v. New Madrid, 148 Mo. App. 57; Coffee v. Carthage, 186 Mo. 573; Heverling v. Warrensburg, 204 Mo. 604; Diamond v. Kansas City, 120 Mo. App. 185; Lueking v. Sedalia, 180 Mo. App. 203, 167 S. W. 1152; Perette v. City, 162 Mo. 238; Bolen v. Kansas City, 32 Mo. App. 8; Maus v. City of Springfield, 101 Mo. 613; Perrigo v. City, 185 Mo. 274; Swanson v. Sedalia, 89 Mo. App. 121; Loewer v. Sedalia, 77 Mo. 431; Shortel v. St. Joseph, 104 Mo. 114; Schultz v. Moon, 33 Mo. App. 329; Musick v. Packing Co., 28 Mo. App. 322; Carney v. Brewing Co., 150 Mo. App. 437; Brueggemann v. Carondelet, 153 S. W. 559; Curtis v. McNair, 173 Mo. 270; Day v. Dry Goods Company, 114 Mo. App. 479; Ludwig v. Cooperage Company, 156 Mo. App. 117; Erwin v. Telephone Co., 158 S. W. 913; Morgan v. Railroad, 136 Mo. App. 337; Herriman v. Railroad, 27 Mo. App. 435; Stephens v. Railroad, 96 Mo.

207; Keegan v. Kavanaugh, 62 Mo. 232; Cox v. Granite
Co., 39 Mo. App. 429; McGee v. Railroad, 92 Mo. 218;
Fusili v. Railroad, 45 Mo. App. 540; Halliburton v.
Wabash, 58 Mo. App. 68; Lucey v. Oil Co., 129 Mo. 32;
Bohem v. Company, 162 S. W. 723; Wesner v. Rail-
road, 177 Mo. App. 117, 163 S. W. 298; Curtwright v.
Ruehmann, 164 S. W. 701; Gambino v. Manufacturing
Co., 164 S. W. 264.   (3)  Instruction number 1 com-
plained of by appellant is a correct declaration of the
law and was properly given.

FARRINGTON, J.—The plaintiff recovered a
judgment for three thousand dollars on account of per-
sonal injuries received by him while in the employ of
the defendant.  The petition is here set forth as an aid
in stating the facts of the case:   (Formal parts
omitted.)

"Plaintiff states that the defendant is now and
was at all the times hereinafter mentioned a corpo-
ration duly organized and existing under and by virtue
of the laws of the State of Missouri, and that on the
8th day of December, 1913, plaintiff was employed by
the defendant in the capacity of sheet metal worker.

"Plaintiff for his cause of action states that on
said 8th day of December, 1913, and while he was so
employed by the defendant in the capacity aforesaid,
said defendant was engaged in the city of Poplar Bluff,
Missouri, in erecting and installing for the Missouri
Public Utilities Company, a metal smokestack, which
said stack was of the height of about one hundred
fifty-two feet, and of the diameter of about six feet, and
the metal composing the same of the thickness of about
one-fourth of an inch; that on the north side of said
pipe and some sixteen feet above the ground was a
large opening of the height of eight feet and of the
width of about six feet and which said opening had
rivet or bolt holes entirely around the same, and which
opening was intended as an entrance for the smoke

that would thereafter be conveyed from an adjoining building by means of large pipes, which said pipes were to be fastened to said smokestack and held in place by means of large heavy contrivances called angle bars.

"Plaintiff further states that on said 8th day of December, 1913, said smokestack had been erected and defendant was preparing to connect the large opening in the north side thereof by means of large piping to the adjacent building as aforesaid, and plaintiff states that to accomplish said purpose it was necessary to raise said angle bars from the ground by means of a block and tackle to the height of said opening; and the plaintiff states that to install said block and tackle, and perform said work and accomplish said results, that it was necessary for the defendant's servants and employees, to work in and about said opening in said stack at said distance of sixteen or more feet from the ground; and, plaintiff states that for their safety, it then and there became the duty of the defendant to furnish, and maintain for them to work upon, a circular platform on the inside of said stack at a point near the bottom of said large opening as aforesaid, said platform to rest upon certain lugs fastened on the inside of said stack for said purpose, and which said platform should have been furnished defendant's employees by it to stand upon while doing said work as aforesaid, but plaintiff states that the defendant carelessly and negligently and in violation of its duty in that regard failed and neglected to so erect, furnish and maintain such platform at said place upon said lugs as aforesaid, or to take any other precaution to protect its employees from injury while working in and about the opening in said stack aforesaid.

"Plaintiff further states that on said December 8, 1913, defendant's foreman with the intention of rigging up a block and tackle to hoist said angle bars up to said opening aforesaid, and well knowing that defendant had negligently and carelessly failed and neg-

lected to furnish and maintain a platform near the bottom of said opening inside said stack and well knowing the dangers attending an attempt to work in and about said opening without said platform being upon the inside of said stack at the place aforesaid negligently and carelessly and in violation of his duty in that behalf, and of the safety of plaintiff, carelessly and negligently ordered plaintiff into a place of danger, to-wit; directed and ordered plaintiff to go to a position in said opening in said stack aforesaid and to place in a bolt hole in the top of said opening a bolt upon which was to be fastened the block and tackle to draw up said angle bar as aforesaid; that to fasten said bolt at the place directed by defendant's foreman, owing to the negligence of defendant in failing to provide and maintain said circular platform on the inside of the stack as aforesaid, it was necessary and which necessity was known to defendant's foreman, for plaintiff to stand with one foot on the thin metal forming the bottom of said opening, place the other foot on one of the lugs inside of the stack and reaching high above his head, place the bolt through the bolt hole aforesaid.

"And plaintiff states that in obedience to said order of his foreman and master, and without fault or negligence on his part, he attempted to place said bolt in said hole in the manner and by the means as aforesaid and while standing on the bottom of said opening and said lug as aforesaid and while attempting to place said bolt in said bolt hole for the purpose and in the manner aforesaid and pursuant to the negligent and careless order of defendant's foreman, aforesaid, and through no fault or negligence upon his part plaintiff's feet slipped from said insecure and insufficient resting places as aforesaid, and as a result he was precipitated and fell to the ground on the inside of said stack and thus and thereby and as a direct result of defendant's negligence plaintiff was permanently injured, wounded, crippled, weakened, bruised,

lamed, and maimed in and about the right leg, ankle and foot, to-wit: The tibia and fibula bones of the lower leg, and the bones of the ankle and foot were fractured and broken, and permanently lamed, crippled, injured and disfigured,'' etc., setting forth in detail plaintiff's alleged injuries and damages and concluding with a prayer for a judgment against defendant in the sum of $7500.

The defendant answered by a general denial, a plea of contributory negligence, and one of assumption of risk.

The evidence shows there were three ways that plaintiff could have gone up to the opening in the stack which was about sixteen feet from the ground, one by a runway, one by a ladder to the top of a roof which extended to within a foot of the opening and about on a level with it, and a third (which plaintiff took) by means of a block and tackle which hung from the top of the stack—about one hundred and fifty feet. The ropes and pulleys hung on the south side of the stack. The opening to which plaintiff was sent was on the north side. He went up on the block and tackle by pulling himself up, aided by another workman at the direction of defendant's foreman. When he was high enough to be even with the opening, he swung himself around to the north side of the stack and stood with his feet on the edge of the stack which marked the bottom side of the opening. From the bottom of the opening, on which plaintiff stood, to the top thereof in which was the hole he intended to put a bolt in, was about eight feet. After he was up in the opening the defendant's foreman saw him and threw him a bolt to place in one of the holes at the top. The bolt was to be used to hang the block and tackle on to draw up some of the material to be used by the men working on the job.

The negligence charged is that defendant's foreman knowingly ordered plaintiff into a dangerous place

to perform his work without providing a circular platform or other device to make the place reasonably safe.

It is admitted that no platform had been erected, and the evidence shows that if plaintiff was to stand there at all it must have been on the edge of the opening.

Plaintiff was a mature and experienced workman, had been working on the job several weeks, and knew when he started up to place the bolt in the hole that no circular platform or any platform was there for him to stand on, and he says that standing as he did on the edge of the stack was the only possible way he could have obeyed the order to place the bolt in the hole.

It is unnecessary to go into the question of contributory negligence and several other questions growing out of assignments of error as we are of the opinion that the case made by plaintiff does not show any negligence alleged in the petition, and hence the submission of the case to the jury was erroneous.

The evidence discloses that plaintiff was in the employ of the defendant, engaged in the construction of a metal smokestack and had been working on this job for several weeks. The stack had been completed as to height, which was about one hundred and fifty feet. There remained to be done the joining onto the stack of the pipes which led from the boilers, and to this end there had been left an opening in the stack the bottom of which was about sixteen feet from the ground. The stack was metal, about one-fourth of an inch in thickness. The opening left in the stack, from which plaintiff slipped and fell, was a segment of the stack eight feet in height and six feet in width, running around—that is, the opening took up about one-third of the circumference. Around the edge of the opening were holes left to rivet or fasten the pipes onto the stack. During the time the stack was being constructed a circular platform had been used which

rested on lugs that were fastened to the inside of the stack. A row of such lugs were left in the stack and these rows were some four feet apart; that is, as the stack went up the platform would be raised from time to time until it reached the top, when it was removed and let down to the ground on the outside of the stack, on a block and tackle which was fastened on the south side of the stack, and by ropes let down to the ground. The circular platform was on the ground and plaintiff knew this when he went to put the bolt in the hole.

He testified, and we must accept it as true, that the foreman ordered him to go up to this opening and place a bolt in one of the holes around the edge on which was to be rigged up a block and tackle with which would be drawn up some angle bars that were to be used when they were ready to fasten the pipes to the stack. He obeyed this order and went up to the opening by means of the block and tackle which hung to the ground from the top of the stack on the south side. He was aided in pulling himself up by one of the workmen on the ground who was ordered by the foreman to help plaintiff. When he had ascended to a point about sixteen feet from the ground he swung himself around to the north side of the stack where he left his seat on the rope and stood either on the iron edge of the opening or on the top of the boiler room roof which extended to within a foot of the stack. While there, the foreman threw him a bolt to be used. Plaintiff then placed one foot on the iron edge of the stack (one-fourth of an inch in thickness), which was the bottom on the opening, and placed his other foot about two feet higher up on the inside of the stack, resting it on one of the iron lugs which had been used to rest the platform on while the stack was being erected. Standing in this position, he attempted to reach eight feet to the top of the opening and place the bolt in a hole when his foot slipped and he fell to the ground, injuring one of his legs.

The evidence is not at all certain that the circular platform could have been used at that place as a support for plaintiff to stand upon in placing the bolt in the hole because the lugs on which it must have rested were not on a level with the bottom of the opening in the stack. The one on which he placed his foot was in a row some two feet above the bottom of the opening and the next row below was several feet lower than the bottom of the opening from which plaintiff could not possibly have reached the hole he was to place the bolt in. In this connection, plaintiff does not say that the foreman particularized which one of the holes was to be used. The evidence leaves it doubtful whether the row on which he placed his foot could have been used because at least one-third of the circumference of the stack at that place was left open, leaving no support whatever under the platform for one-third of its circumference, and this too at the very place the weight of one standing thereon would have been. The evidence and the physical facts show that the platform, owing to its diameter, could not have been placed through the arc of the stack without reducing its size to such an extent that it would not when so reduced have rested on the lugs. Again, owing to the necessary size, shape and weight of this platform, it would probably be attended with more danger to the men putting it up than attended the simple insertion of a bolt from the same place without the aid of any platform. Plaintiff's special charge of negligence must therefore fail because his testimony in connection with the physical facts fails to show with sufficient certainty that it was possible for defendant to have used the circular platform at all.

Aside from this, there is another reason why plaintiff cannot recover under this petition. This work was in course of construction and plaintiff testified he was simply ordered to go and place a bolt in a hole preparatory to beginning the work of joining the pipes

from the boilers to the smokestack. His order was to go and perform an isolated and temporary act. He was thoroughly familiar with all the surroundings and conditions, nothing was hidden, and the danger and risks attending thereon were perfectly apparent to him. He was not to go to a place which the master had defectively prepared, so as to be said to have been lured into an unsafe place to do an act which apparently was safe, nor was he sent to a place where he would be required to stay and perform labor or work. His own testimony shows it was but a temporary act to be done in providing a means of getting the angle bars up to the place where the labor of putting them in would begin.

It is a risk that is incident to the work and well known to every one of ordinary understanding that workmen who are required to climb around an iron structure in course of construction will at times slip and fall. Such accidents will necessarily happen so long as such work goes on; and this, too, where the duty of exercising ordinary care has been observed.

*Ordinary care* does not require that the master build a platform or scaffold everywhere his employees are required to go merely to perform some temporary particular or isolated act which is necessary to be done to carry on the successful erection of a structure. To make such a requirement would place the burdens of an insurer on the employer, and this cannot be done under the present state of the law. The rule is stated in the case of Armour v. Hahn, 111 U. S. 313, 28 L. Ed. 440, to the effect that the obligation of a master to provide reasonably safe places and structures for his servants to work upon does not oblige him to keep a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends on the due performance of that work by them and their fellow-servants. That case

has been cited and quoted from with approval in the
following cases: Bradley v. Railway Co., 138 Mo. 293,
302, 39 S. W. 763; Bloomfield v. Worster Constr. Co.,
118 Mo. App. 1. c. 257, 94 S. W. 304; Bennett v. Lime
Co., 146 Mo. App. 1. c. 573, 124 S. W. 608; Cooney v.
Laclede Gaslight Co., 186 Mo. App. 156, 171 S. W. 572.
The same principle applies where a servant is sent
into an unsafe place for the purpose of making it safe.
[Rowden v. Schoenherr-Walton Mining Co., 136 Mo.
App. 376, 117 S. W. 695.] The rule is stated in Zeigen-
meyer v. Goetz Lime & Cement Co., 113 Mo. App. 1. c.
336, 88 S. W. 139, supported by a copious citation of
authorities, as follows. "To follow the question still
further, we find the rule of safe place is not applicable
to every state of facts, nor is the principle of safe place
pertinent in every case that may arise out of the multi-
plicity of employments and diversity of risks encoun-
tered. It has one well defined and thoroughly estab-
lished exception. It is that the master is not required
to furnish his servant a safe place in which to work
where the danger is temporary or transitory only and
when it arises from the hazard and progress of the
work itself, and is known to the servant." [See, also:
4 Labatt's Master & Servant (2 Ed.), secs. 1517 and
1518; Id., sec. 924.] In 1 Bailey on Personal Injuries
(2 Ed.), sec. 80, p. 222, the rule is thus stated: "*Tem-
porary places.*—The place to work, to be within the
rule, must be a place permanent in character, as dis-
tinguished from where the servant is making his own
place to work in." [See, also, sections 81, 83 and 85,
Id.] The exception to the safe place rule obtains
where in the erection of structures the conditions are
changing. [4 Thompson on Negligence, p. 3876.]

In applying the doctrine to the facts of this case
we must find that plaintiff's case made placed him
within the exception as to the duty of furnishing a
safe place to the servant and that he failed to convict

the defendant of any negligence as alleged in the petition.

The evidence does disclose that defendant's superintendent had ordered the foreman (just a few moments before plaintiff was directed to go to the opening) to erect a platform from the outside of the stack so the men could stand thereon when joining the pipes to the stack and attaching the angle bars which plaintiff says were to be hauled up by the bolt he was sent to put in, and that some of the employees were directed to procure the boards for that purpose.

We are of the opinion that a ground for liability might be established if it appeared that the foreman, knowing that a platform would soon be erected, unnecessarily sent the plaintiff to place the bolt in the hole when he might as well have waited only a short time and by waiting would not have subjected plaintiff to unnecessary hazardous risk. [Strother v. Kansas City Milling Co., 261 Mo. 1, 169 S. W. l. c. 47.] The judgment will therefore be reversed and the cause remanded. *Robertson, P. J.,* and *Sturgis, J.,* concur.