[L. A. No. 4112.   Department Two.—September 6, 1916.]

## WILLIAM FAHEY, Respondent, v. PANAMA-CALIFORNIA EXPOSITION (a Corporation), Appellant.

NEGLIGENCE—FALL FROM FLOOR OF BRIDGE—UNSUITABLE WORKING APPLIANCE—NEGLIGENT STARTING OF MACHINERY.—In an action by an employee to recover for personal injuries resulting from a fall from the floor of a bridge while there assisting in the work of moving a heavy piece of timber, the judgment for the plaintiff is sustained by the evidence that the defendant failed to supply the plaintiff with a suitable appliance for the work, coupled with the negligent starting of the machinery by which the timber was to be moved, without warning to the plaintiff, thus causing him to lose his balance and fall to the ground.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order refusing a new trial. W. H. Thomas, Judge.

The facts are stated in the opinion of the court.

Eugene Daney, for Appellant.

Shreve, Reed, Sample & Shreve, and Theodore Stensland, for Respondent.

MELVIN, J.—Defendant appeals from the judgment and from an order denying its motion for a new trial.

Plaintiff was a day laborer employed by defendant. He was directed to perform certain work on one of the levels of the "Cabrillo Bridge" in Balboa Park in the city of San Diego. That he fell from the bridge while engaged in that employment and that he was very severely injured is not denied, but appellant takes the position that in any view of the evidence it fails to support the verdict. Respondent insists that the verdict is fully supported, and that the defendant is properly charged with responsibility upon any one of the three following grounds: 1. The place in which plaintiff was directed to work was not a reasonably safe place; 2. The defendant failed to furnish suitable appliances to plaintiff for the prosecution of the work; and 3. The sudden moving without warning to plaintiff of the timber upon which he was

exercising his strength was negligence on the part of defendant, its servants, and agents, sufficient to charge it with responsibility for the injury sustained by plaintiff.

The level upon which Fahey was at work was about fifty-five feet from the ground. It had been floored during a part of the work but most of the flooring had been taken away, the plaintiff himself having assisted in the work of removal. There was some testimony that the taking away of the floor was necessary in order that some large pieces of timber twelve by twelve and sixteen feet long might be moved along the longitudinal timbers of that level and put in place for the extension of the work. At least one witness testified, however, that this work might have been done just as well and with much greater safety without the removal of the floor. Be that as it may, it appears without conflict that the only floor of that part of the bridge upon which Fahey was called to work was made up of timbers four inches wide placed and arranged in parallel pairs so that the stringers of each pair lay approximately one foot apart and the pairs were separated by intervals of about twenty feet. According to Fahey's testimony he was instructed by the engineer to assist in sliding or skidding the twelve by twelve timbers into proper position for attachment to a derrick. Just before the accident he and the engineer were at work moving one of these heavy pieces of wood. A rope was attached to the timber and to a drum or "niggerhead" to which on proper signal power was to be applied. Owing to the position of the timber it was necessary for the men to move it some distance by hand-power and leverage before the pull of the rope from the "niggerhead" could be advantageously applied. Fahey testified that he asked for a "peavy" (a sort of lever commonly used in such work) but was informed that there were none available; and that therefore under instructions from his superior he used as a substitute a two by six stick from four to six feet in length. This he applied as a lever to the twelve by twelve timber and was sliding it over when suddenly without warning to him the machinery was started, the huge timber against which he was exerting his strength was pulled away, and as a result he lost his balance and was hurled to the ground.

Appellant's first contention is that the obligation generally resting upon a master to furnish a safe place in which to work does not apply when the danger is only temporary and tran-

sitory and arises from the hazard and nature of the work itself and this is known to the servant. (Citing such authorities as Labatt's Master and Servant, sec. 269; *Bloomfield v. Worster Construction Co.,* 118 Mo. App. 254, [94 S. W. 304], and *Callan v. Bull,* 113 Cal. 593, 603–605, [45 Pac. 1017].) The contention is made that the very nature of the work of constructing this bridge was such that the defendant might not safeguard its workmen more than it did. The obvious answer to this is that defendant had found it necessary at an earlier stage of the work to have a floor laid upon that same level of the bridge for the convenience and safety of its workmen, and that without necessity the temporary flooring was in part removed before the prosecution of the very dangerous task at which Fahey was engaged when he received his injury. But appellant reminds us that Fahey himself assisted in taking up the floor and consequently accepted all risks ordinarily incident to working upon the stringers. However, it is not material whether the place furnished by defendant was or was not a reasonably safe one. Even if appellant's contention be correct, and even if we grant the position that the evidence fails to establish defendant's negligence in furnishing an unsafe place for its workmen, we are compelled to sustain the judgment of the superior court because there is evidence to support the contentions that Fahey was put to work without proper instrumentalities for the safe prosecution of his task and that the sudden, unexpected removal of the large timber precipitated him to the ground.

Appellant meets the second contention of respondent by quoting testimony to the effect that there were plenty of canthooks and peavies provided for work on the bridge and that Fahey might have procured one very easily. But there was plaintiff's own testimony to the effect that Mr. Barton, the man under whose instructions he was working, had ordered him to use the scantling as a lever. It requires no evidence from experts to convince one of ordinary experience that a man using such a lever would be exerting his strength in a different and more perilous direction than that followed by the wielder of a canthook or peavy. It is not material how many suitable appliances defendant owned if Fahey was ordered to use a scantling by way of a substitute for one of them.

While admitting that the machinery was started and the timber was moved by its power without previous notice to Fahey, appellant's counsel insists that plaintiff could not have been surprised because, according to Fahey's own testimony, the timber was in motion *before* and *at the time* of the accident. A glance at the testimony of the plaintiff, however, reveals the fact that he referred to the motion imparted to the timber by the levers and not its movement by the pulling of the rope attached to the "niggerhead." He testified in part as follows: "On this occasion before the timber suddenly moved there was not to my knowledge any signal given. I never seen or heard anybody give a signal. I was signal man at that time and I should have given a signal, that is, if a signal was necessary.

"The signal at that time was not necessary because the log I was working on was in motion. Before there was any movement by the power of the engine of that timber I was working on there should have been a signal given by me first. I did not give such signal." From this testimony it will be seen that instead of admitting his knowledge that the power of the machinery was being applied, Fahey consistently maintained his position that the sudden removal of the timber on which he was exerting his strength caused the fall which resulted in the injuries for which he sought compensation. That the commonest sort of ordinary care required defendant's servants to give notice before the machinery was set in motion is too obvious for argument. Barton, the engineer, who gave the order to start the machinery, testified that he gave Fahey no warning, although the latter was between him and the man to whom he signaled the instruction to set the machinery in motion. We conclude, therefore, that the judgment and order are supported by proof that defendant failed to supply plaintiff with a suitable appliance for the work at hand coupled with the negligent starting of the machinery, without warning to Fahey, thus causing him to lose his balance and fall to the ground.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.